THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL
WALTER SCHULZE, *Appellant.*

*Tom P. Conom; Doherty, Doherty & Ritchie* and *Craig A. Ritchie,* for appellant.

*David H. Bruneau, Prosecuting Attorney,* and *James R. Hickman, Deputy,* for respondent.

DORE, J.—Michael Walter Schulze appeals his conviction on one count of vehicular homicide.[1] We affirm.

## ISSUES

Schulze raises several issues regarding the blood test mandated by RCW 46.20.308(3) when a driver is suspected of committing vehicular homicide while under the influence of or affected by intoxicating alcohol or drugs. These include: (1) whether Schulze had a CrR 3.1 or Const. art. 1, § 22 (amend. 10) right to counsel before submitting to the mandatory blood test; (2) whether RCW 46.20.308(3) permitted the testing of Schulze's blood for drugs; (3) whether the "special evidence warning" given to Schulze required suppression of the blood test results; and (4) whether the state toxicologist complied with his duty to approve methods for blood alcohol testing under RCW 46.61.506(3).

## FACTS

On August 15, 1987, approximately 1 mile north of Forks, Schulze's vehicle crossed the center line of Highway 101 and collided with a pickup truck driven by Gordon Kopseng. The collision occurred sometime between 9:30 and 9:50 p.m. Mr. Kopseng died at the scene of the collision. There were no witnesses to the collision other than Schulze's passengers: his girl friend, Allison Black, and his son, Matthew Schulze.

The Forks Police Department received a call about the collision at approximately 9:51 p.m. Officers Vern Johnson

---

[1]This case was consolidated for argument with *State v. Curran,* 116 Wn.2d 174, 804 P.2d 558 (1991).

and Granville Jack Rice of the Forks Police Department, and Deputy Randy Pieper of the Clallam County Sheriff's Department responded to the collision within 5 minutes of the call. Trooper David Sue of the Washington State Patrol arrived at the scene within an hour. In the Schulze vehicle they found open bottles of Kahlua, George Dickel, and Budweiser.

Sergeant Rice transported Schulze to Forks Community Hospital to be examined. In the emergency room waiting area, at 11:14 p.m., Rice read Schulze his *Miranda* rights. Troopers Richard Helpenstell and Willie Johnson of the Washington State Patrol arrived at the hospital, and Trooper Helpenstell again read Schulze his *Miranda* rights at 11:20 p.m. It was not until 11:23 p.m. that Schulze was formally placed under arrest for vehicular homicide by Trooper Helpenstell.

Following the arrest, Trooper Helpenstell gave Schulze the "special evidence warning," which informed Schulze a blood test could be taken without his consent and he had the right to additional tests at his choice and expense. Schulze refused to sign the acknowledgment of the special evidence warning and refused to consent to the blood test. Schulze stated, "'I don't think that's right. I want my lawyer from Seattle.'" Report of Proceedings, at 73, 74 (Jan. 26, 1988). Schulze was defiant about refusing to allow the officers to take his blood. The blood draw was made at approximately 11:45 p.m., without Schulze's consent, but without physical resistance.

Schulze was taken to the Forks Police Department at approximately 1 a.m and was allowed to contact his attorney. The blood sample taken from Schulze was analyzed and found to contain .05 percent blood alcohol. The sample also contained diazepam, the active ingredient of valium, in the quantity of 1.23 milligrams per liter and nordiazepam, the metabolite of diazepam, in the quantity of .52 milligrams per liter.

Several witnesses to Schulze's behavior at the scene of the collision testified at his trial that Schulze had appeared

to be under the influence of some type of intoxicant. Officer Johnson testified that Schulze appeared to be "under the influence of something." Report of Proceedings, at 15, 18 (July 13, 1988). Sergeant Rice testified that Schulze "was affected by something," but he "couldn't say what." Report of Proceedings, at 52–53. Deputy Pieper testified Schulze's eyes were glassy and that he observed a "slight pallor to his skin." Report of Proceedings, at 301, 311. Deputy Pieper also testified that he smelled the odor of intoxicants on Schulze.

Members of the Anderson family, who live near the scene of the collision, arrived at the scene after hearing the crash. Mr. Anderson testified that, although Schulze "didn't seem slopping drunk", he did seem "spaced out." Report of Proceedings, at 138–55. Mrs. Anderson testified she believed Schulze was intoxicated or on drugs.

John Anderson knew Schulze throughout their school years. He denied to Trooper Sue that Schulze was drunk at the scene. Another friend of Schulze, Tammi Scott, who was present at the hospital, testified that Schulze was not falling down or sloppy drunk. Schulze claimed he was not drunk but had fallen asleep or passed out at the wheel.

Some significant facts of this case deserve special attention. Schulze was not formally arrested until he was at the hospital at 11:23 p.m., approximately 1½ hours after the collision. He had been at the scene of the collision for at least 1 hour. During this time he was conscious, not under arrest, and had his girl friend, his son, and a school friend with him. He and his friends had full access to both vehicles and the ability to investigate the gouge marks left in the road or any other relevant evidence. However, he did not attempt to gather exculpatory evidence on his own nor did he call an attorney to come to the scene to conduct an investigation.

Before his formal arrest, Schulze was read his *Miranda* rights and, at that time, waived his right to an attorney by not requesting one. It was not until the second time he was

read his rights, at 11:23 p.m., that Schulze asked for his attorney in Seattle.

Schulze was convicted by a jury of one count of vehicular homicide on July 22, 1988, and he now appeals this conviction.

## STATUTORY FRAMEWORK

Several statutes are relevant to Schulze's appeal. The first is the vehicular homicide statute, RCW 46.61.520. This statute provides that the crime of vehicular homicide is committed:

> When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person [1] while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or [2] by the operation of any vehicle in a reckless manner or [3] with disregard for the safety of others . . ..

RCW 46.61.502 defines the crime of driving while under the influence. At the time of the collision in this case, the crime could be committed by driving while:

> (1) The person has 0.10 grams or more of alcohol per two hundred ten liters of breath, as shown by analysis of the person's breath made under RCW 46.61.506; or
> (2) The person has 0.10 percent or more by weight of alcohol in the person's blood as shown by analysis of the person's blood made under RCW 46.61.506; or
> (3) The person is under the influence of or affected by intoxicating liquor or any drug; or
> (4) The person is under the combined influence of or affected by intoxicating liquor and any drug.

RCW 46.20.308 is the "implied consent law" and is central to this appeal. It provides in relevant part:

> (1) Any person who operates a motor vehicle within this state is deemed to have given consent, . . . to a test or tests of his or her breath or blood for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.
> (2) . . . The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of

his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

(3) Except as provided in this section, the test administered shall be of the breath only. If an individual . . . is under arrest for the crime of vehicular homicide . . . a breath or blood test may be *administered without the consent of the individual so arrested.*

Finally, RCW 46.61.506 provides guidelines for the administration of blood and breath tests, including the requirement that chemical analysis be performed according to methods approved by the state toxicologist. WAC 448–14 contains the state toxicologist's methods for analysis of blood samples for alcohol.

## ANALYSIS

### I

Schulze's first assignments of error relate to his right to counsel under Superior Court Criminal Rule 3.1 and Const. art. 1, § 22 (amend. 10).[2] Schulze argues the results of his blood test should have been excluded because he was not permitted to contact his attorney before submitting to the blood draw. We hold Schulze had no right to counsel before submitting to the mandatory blood draw.

RCW 46.61.502 defines the crime of driving while under the influence. RCW 46.20.308 provides in subsection (3) that if a person is under arrest for the crime of vehicular homicide "a breath or blood test may be administered without the consent of the individual so arrested". This

---

[2]CrR 3.1(c) provides in relevant part:

"(1) When a person is taken into custody that person shall immediately be advised of the right to counsel. . . .

"(2) At the earliest opportunity a person in custody who desires counsel shall be provided access to a telephone, the telephone number of the public defender or official responsible for assigning counsel, and any other means necessary to place the person in communication with a lawyer."

Const. art. 1, § 22 (amend. 10) provides in relevant part:

"In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel . . .."

provision that the "blood test may be administered *without . . . consent*" is a substantive matter and cannot be amended by a procedural court rule such as Superior Court Criminal Rule 3.1.

██ ██ This court's opinion in *State v. Judge,* 100 Wn.2d 706, 714–15, 675 P.2d 219 (1984) is particularly relevant here. In *Judge,* we held that a driver suspected of vehicular homicide has no right to counsel based on the sixth amendment to the United States Constitution before submitting to a mandatory blood test. 100 Wn.2d at 714–15. A Sixth Amendment right to counsel attaches only at a "critical stage" in a criminal prosecution. No critical stage arises prior to the initiation of formal judicial proceedings by citation or indictment. *Judge,* 100 Wn.2d at 714 (citing *Kirby v. Illinois,* 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972)).

We noted in *Judge,* 100 Wn.2d at 715, that the rationale of the United States Supreme Court in *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966) strengthened our holding. In *Schmerber* an accident victim's attorney advised him not to submit to a blood test after an officer arrested him for driving while intoxicated. The suspect claimed he was denied his right to counsel when he was not allowed to follow the attorney's advice. The Supreme Court disagreed: because the suspect had no right not to submit to the test regardless of his attorney's advice, he was not denied his right to counsel. 384 U.S. at 765–66. This rationale is equally applicable here because, as was true in *Schmerber,* Schulze had no right not to submit to the blood test.

The *Schmerber* and *Judge* cases require a holding in this case that Schulze's blood test results were not inadmissible because he did not have his attorney present during the blood draw. Even though *Schmerber* and *Judge* dealt only with the Sixth Amendment, we hold that Washington Const. art. 1, § 22 (amend. 10) does not compel a different result. At the time Schulze's blood was drawn, he had been arrested but not formally charged with vehicular homicide.

No "critical stage" had been reached, and the right to counsel guaranteed by Const. art. 1, § 22 (amend. 10) had not been triggered. *See Tacoma v. Heater,* 67 Wn.2d 733, 739, 409 P.2d 867 (1966).

Nevertheless, Schulze contends the blood test results should have been suppressed because his CrR 3.1 right to counsel was violated. Unlike the Sixth Amendment, CrR 3.1 does not require the initiation of formal criminal proceedings before the right to counsel arises. Rather, being taken into custody creates the right.

■■ This fact does not change our conclusion. The remedy Schulze seeks for the alleged violation of his court rule right to counsel is either dismissal of the charges against him or suppression of his blood test results. Even assuming arguendo that Schulze's court rule right to counsel was violated, neither remedy is warranted. We held in the recent case of *Spokane v. Kruger,* 116 Wn.2d 135, 803 P.2d 305 (1991) that suppression of evidence, rather than dismissal of charges, is the proper remedy for a violation of a defendant's court rule right to counsel. *Kruger,* at 144–45 (overruling *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, 18 A.L.R.4th 690, *vacated and remanded,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd on remand,* 94 Wn.2d 858, 620 P.2d 999 (1980)). However, suppression is only warranted where, as was the case in *Kruger,* the evidence to be suppressed has been tainted by the violation. Schulze's blood test results were not tainted.

In *Kruger,* the defendant was arrested for driving while under the influence after a police officer noticed his car swerving and pulled him over. The officer observed that Kruger's eyes were bloodshot and watery, his speech was slurred, and his breath smelled of intoxicants. *Kruger,* at 136. After making these and other observations, the officer placed Kruger under arrest. The officer found open containers of beer and some marijuana in Kruger's car. Kruger was then taken to the county jail, where he was booked for driving under the influence of alcohol or drugs, resisting arrest, and possession of a controlled substance.

At the station, Kruger was taken to the Breathalyzer room. The officer explained to Kruger that he could talk with an attorney by telephone, but Kruger refused to get out of his chair to call his attorney. He was not given the public defender's phone number nor presented with a list of on–call public defenders, as required by former JCrR 2.11(c)(2) (now CrRLJ 3.1(c)(2)). The City conceded before this court that it had violated Kruger's court rule right to counsel. The sole issue in *Kruger,* then, was what remedy was proper for the violation.

We held that the proper remedy for the violation of Kruger's court rule right to counsel was suppression of the evidence which was tainted by the violation. *Kruger,* at 146. In so holding, we overruled *Fitzsimmons'* holding that such a violation requires dismissal of charges because of the inevitable and irreparable prejudice that occurs with a violation of one's right to counsel. *Fitzsimmons,* at 451. We stated:

> It is simply not true that irreparable prejudice must inevitably flow from a denial of counsel. As the dissent in [*Tacoma v.*] *Heater,* [67 Wn.2d 733, 409 P.2d 867 (1966)] pointed out, denying a defendant immediate access to counsel does not mean that any and all exculpatory evidence is forever lost. Witnesses who observed the defendant's behavior prior to, and possibly during, the events leading up to the arrest can be called to testify. While there will not always be disinterested witnesses available, the same can be said for many circumstances where criminal charges are brought. Moreover, in those cases where prejudice does result from the violation of an accused's right to counsel, suppression of the tainted evidence will protect the rights of the accused to a fair trial.

*Kruger,* at 145.

The evidence tainted by the violation of Kruger's right to counsel was thus excluded. This included primarily his refusal to take the Breathalyzer test, *Kruger,* at 138, but did not include the evidence gathered by the officer before the violation. That evidence was admissible because it was not tainted. Assuming for argument's sake that Schulze's right to counsel was violated, he was also entitled to have the evidence tainted by the violation excluded at trial.

Because he asks for suppression of his blood test results, the question is, were Schulze's blood test results tainted by a violation of his right to counsel? The answer is "no" because, even if Schulze had contacted his attorney, the attorney could have done nothing but instruct Schulze to submit to the mandatory blood test. The attorney advice or lack thereof was completely irrelevant.

The instant case is very different from *Kruger* because Kruger was accused of driving while under the influence, while Schulze was accused of a much more serious offense, vehicular homicide. A person accused of driving while under the influence has the option to submit or not to a breath or blood test. Thus, had Kruger been permitted to contact his attorney, the attorney could have advised him whether his best course of action would have been to take the breath test, or to refuse the test and have the evidence of his refusal used against him at trial. By being denied his right to counsel, Kruger was denied what could have been very helpful advice.

In contrast, a person accused of vehicular homicide, as was Schulze, does not have the option of refusing to submit to a blood test. Because of the seriousness of the offense, the Legislature has mandated that vehicular homicide suspects submit to a blood test regardless of consent. RCW 46.20.308(3). Had Schulze contacted his attorney, the attorney might have assisted him in other matters, but he could not have instructed Schulze not to take the blood test under any circumstances. We hold that Schulze was not entitled to suppression of his blood test results.

In sum, we hold that neither CrR 3.1 nor Const. art. 1, § 22 (amend. 10) requires the suppression of Schulze's blood test results.

## II

Schulze next argues the trial court committed reversible error in refusing to suppress the blood drug test results because RCW 46.20.308(1) authorizes a blood test only "for

the purpose of determining the alcoholic content of [a driver's] . . . blood . . .". We hold Schulze's blood was properly tested for drug content.

■■ Schulze is correct that RCW 46.20.308 does not specifically provide for a driver's deemed consent to a blood test for drug content. However, the statutory scheme, when analyzed in its entirety, authorizes a nonconsensual blood test in a vehicular homicide case where the driver has been arrested for driving while under the influence of alcohol *or drugs*. RCW 46.20.308(3); RCW 46.61.520; RCW 46.61.502. If we adopted Schulze's reasoning, an absurd result would ensue: a vehicular homicide suspect who was apparently under the influence of drugs could be forced to submit to a blood test. However, this test could not be for the purpose of establishing the presence of drugs in his blood. We do not favor such absurd results. *See State v. Fjermestad,* 114 Wn.2d 828, 791 P.2d 897 (1990). *See also State v. Rangitsch,* 40 Wn. App. 771, 775–76, 700 P.2d 382 (1985) (approving the taking of a blood sample from a negligent homicide defendant for the sole purpose of testing it for drugs).

### III

Next, Schulze contends the "special evidence warning" given to him requires suppression of his blood evidence. We disagree.

Before a person arrested for vehicular homicide may be forced to submit to the blood test mandated by RCW 46.20.308(3), he must be advised of his right to have additional tests administered by a person of his choosing. RCW 46.20.308(2); *State v. Turpin,* 94 Wn.2d 820, 824–25, 620 P.2d 990 (1980). This is known as a "special evidence warning."

In this case, Trooper Helpenstell informed Schulze of his right to have additional tests performed. Trooper Helpenstell also informed Schulze his blood could be tested for drugs as well as alcohol and that any additional tests must be performed at Schulze's expense. Schulze contends the

inclusion of these latter statements in the special evidence warning were improper and mandate suppression of the results of Schulze's blood test.

■ The effect of the "at your own expense" language of the special evidence warning was specifically considered by this court in *State v. Bartels,* 112 Wn.2d 882, 774 P.2d 1183 (1989) and *Gonzales v. Department of Licensing,* 112 Wn.2d 890, 774 P.2d 1187 (1989). We determined that the words "'at your own expense'" should not be included in the special evidence warning, 112 Wn.2d at 889; however, we refused to require suppression absent a finding of prejudice to a defendant, at least in cases where the warnings were given prior to this court's opinion in *Bartels, i.e.,* June 1989.

The warning in this case was given in 1987. Schulze has failed to demonstrate that he was prejudiced by Trooper Helpenstell's use of the "at your own expense" language. Schulze makes no claim of indigency and, in fact, Schulze retained his own counsel at trial and on this appeal. The test results will not be suppressed because of the use of the words "at your own expense" in the special evidence warning.

Schulze also objects to the statement by Trooper Helpenstell that Schulze's blood could be tested for drugs as well as alcohol. Because we have determined Schulze's blood was properly tested for drugs, this statement was proper.

IV

Schulze contends the state toxicologist failed to comply with his statutory duty to approve methods for blood alcohol testing under RCW 46.61.506(3). We disagree and hold the regulations set out in WAC 448–14 are sufficient to meet the statute's requirements.

As a factual matter, it is uncontested that the blood test in this case was conducted according to methods approved by the state toxicologist and gave a scientifically valid result. However, Schulze contends that WAC 448–14–010,

–020, and –030, which set forth the testing methods, are not sufficiently specific. RCW 46.61.506(3) requires methods for blood alcohol testing to be approved by the state toxicologist:

> Analysis of the person's blood or breath to be considered valid under the provisions of this section or RCW 46.61.502 or 46.61.504 shall have been performed according to methods approved by the state toxicologist and by an individual possessing a valid permit issued by the state toxicologist for this purpose. The state toxicologist is directed to approve satisfactory techniques or methods . . ..

To implement RCW 46.61.506(3), the state toxicologist has promulgated regulations governing blood alcohol tests. The regulations approve the tests only if they meet strict standards for precision, accuracy, and specificity. WAC 448–14–010. The regulations also specify the general manner in which tests must be conducted. WAC 448–14–010. WAC 448–14–020 sets forth analytical and reporting procedures for blood tests, and standards for sample containers and preservation. WAC 448–14–030 sets forth qualifications for blood alcohol analysts.

■■ Our review of the adequacy of the state toxicologist's regulations is governed by the arbitrary and capricious standard. *See State v. Ford,* 110 Wn.2d 827, 832, 755 P.2d 806 (1988). As the State noted at oral argument, a "cookbook" detailing every step of the authorized procedure is not necessary. We are satisfied that the regulations set forth in WAC 448–14 are sufficiently specific to meet the requirements of RCW 46.61.506(3). *See State v. Ford,* 110 Wn.2d at 832 (it is not the court's function to substitute our judgment for that of the state toxicologist).

V

■ Finally, Schulze assigns error to the trial judge's failure to give a number of Schulze's proposed jury instructions. Jury instructions must be considered in their entirety to determine if there is reversible error in a specific instruction. *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters,* 107 Wn.2d 524, 533, 730 P.2d 1299, *cert.*

*denied,* 484 U.S. 815 (1987). The instructions given by the trial judge in this case, when viewed as a whole, were adequate to explain the law and to enable the parties to argue their theories of the case. *See State v. Rice,* 110 Wn.2d 577, 603, 757 P.2d 889 (1988), *cert. denied,* 491 U.S. 910 (1989). Schulze was not entitled to the more specific jury instructions he requested. Schulze raises several other issues which we find to be without merit.

### Conclusion

Approximately an hour and a half after the vehicular homicide, the defendant was taken to the Forks Community Hospital and placed under arrest. At 11:14 p.m., Sergeant Rice read Schulze his *Miranda* rights, including the right to have an attorney. The defendant made no request for an attorney at that time and waived his rights to have an attorney called. Nine minutes later, at 11:23 p.m., two patrolmen brought in the equipment to take defendant's blood sample, and defendant was again read his *Miranda* rights. The defendant objected and asked the police to secure his Seattle attorney for advice prior to the test being taken.

The sole issue here is whether the blood test results should be suppressed.

We deny defendant's motion for suppression as RCW 46.20.308(3) provides, in a vehicular homicide accident, in relevant part, as follows:

> (3) Except as provided in this section, the test administered shall be of the breath only. If an individual . . . is under arrest for the crime of vehicular homicide . . . a breath or blood test may be *administered without the consent of the individual so arrested.*

Affirmed.

Callow, C.J., and Brachtenbach, Dolliver, Durham, and Guy, JJ., concur.

Andersen, J., concurs in the result.

UTTER, J. (dissenting)—I dissent. The police denied Schulze his right to counsel by refusing to let him telephone his attorney upon arrest. Accordingly, we must reverse his conviction.

We have consistently held that, under our court rules, the right to counsel for an alcohol related offense attaches at the moment of arrest. *Tacoma v. Heater,* 67 Wn.2d 733, 409 P.2d 867 (1966); *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893, 18 A.L.R.4th 690, *vacated and remanded,* 449 U.S. 977, 66 L. Ed. 2d 240, 101 S. Ct. 390, *aff'd on remand,* 94 Wn.2d 858, 620 P.2d 999 (1980); *State ex rel. Juckett v. Evergreen Dist. Court,* 100 Wn.2d 824, 675 P.2d 599 (1984) (Dore, J., writing for a unanimous court); *State v. Staeheli,* 102 Wn.2d 305, 685 P.2d 591 (1984).[3] We unanimously reaffirmed this holding in a case decided this term. *Spokane v. Kruger,* 116 Wn.2d 135, 803 P.2d 305 (1991).[4] The majority fails to account for much of this precedent. Instead, it silently overrules at least three decisions of this court.

The majority relies on precedent holding that the Sixth Amendment does not require recognition of the right to counsel upon arrest. *State v. Judge,* 100 Wn.2d 706, 714, 675 P.2d 219 (1984). Such reliance ignores our holding in

---

[3]Schulze's right may be of state constitutional dimension. In *Heater,* we relied on both state and federal constitutional provisions. *Heater,* 67 Wn.2d at 735. On remand in *Fitzsimmons,* we relied primarily on the court rule, but stated that our reliance on federal law "would not preclude . . . taking a more expansive view of the right to counsel under state provisions". *Fitzsimmons,* 94 Wn.2d at 859.

Because Schulze's rights under the court rule were violated, we have no occasion to address the question of whether Schulze's rights are of state constitutional dimension. The majority argues that there is no state constitutional right to counsel upon arrest in a case such as this and cites to *Heater.* It is true that the right to counsel attaches at a "critical stage" under our state constitution. However, the majority ignores the fact that *Heater* holds, in drunk driving cases, arrest is a "critical stage". See majority, at 161–62; *Heater,* 67 Wn.2d at 739–40.

[4]My dissent in *Spokane v. Kruger, supra,* only addresses the issue regarding the remedy to be provided for a violation of this right to counsel. *Kruger* provides that the remedy now for a denial of counsel in violation of former JCrR 2.11 is suppression of any evidence acquired after the violation, overruling *Fitzsimmons* insofar as the remedy provided was dismissal.

*Evergreen,* in which Justice Dore, writing for a unanimous court, recognized that the result under our court rule differed from the result under the Sixth Amendment. 100 Wn.2d at 830. We confronted the divergence between the requirements of the sixth amendment to the United States Constitution and those of the court rule in *Fitzsimmons.* In *Fitzsimmons,* we identified our court rule as the primary source of the right to counsel upon arrest in a DWI case. 93 Wn.2d at 441–42. The procedural history of *Fitzsimmons* is complex; however, the ruling that the right to counsel pursuant to the court rule attaches upon arrest is still good law.

The majority, relying on *Judge* and *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), finds that Schulze's right to counsel pursuant to Const. art. 1, § 22 (amend. 10) has not been violated, because "[n]o 'critical stage' had been reached". Majority, at 162. However, in *Heater* we held that the right to counsel in cases involving drunk driving attaches at the moment of arrest. We explained that this moment was a critical stage of the proceedings, because the "evidence of intoxication dissipates with the passage of time." *Heater,* at 739. In particular, we noted that the failure to allow the defendant to immediately notify counsel deprived him of the opportunity to have a doctor administer an objective blood test as soon as possible after the arrest. *Heater,* at 739. Therefore, denying access to counsel interfered with the accused's ability to prepare a defense to the charge, and to obtain potentially exculpatory evidence.

We followed the reasoning of *Heater* in *State v. Turpin,* 94 Wn.2d 820, 620 P.2d 990 (1980). In *Turpin,* we held that the State has a statutory duty to notify a person accused of vehicular homicide that he has a right to an independent blood test. In so doing we pointed out that "[i]t is in just such cases that the need to protect the defendant's right to proof is most important." 94 Wn.2d at 826. We went on to suppress the results of the blood test because the defendant had no opportunity to procure his own test.

*Heater* and *Turpin* both stand for the principle that an accused must have the opportunity to gather potentially exculpatory evidence as soon as possible after the arrest. The only way to effectively protect that right is to provide access to counsel once the suspect is arrested, and prior to any mandatory blood test. Thus the logic of *Heater* and *Turpin* fits in perfectly with our previous holdings that the statutory right to counsel attaches as soon as the suspect is arrested.

The majority acknowledges that the right to counsel under CrR 3.1 is broader than the Sixth Amendment right to counsel. Majority, at 162. It then goes on to say that the distinction is irrelevant, analyzing that under *Kruger* no remedy is warranted in this case because the evidence is not tainted. Majority, at 162–63. However, the denial of counsel effectively raises a presumption of prejudice to the defendant. *Heater,* 67 Wn.2d at 739–40. Such an argument is certainly applicable to this case. Schulze had only .05 percent blood alcohol level. Thus, he was not guilty of a per se violation of driving under the influence. RCW 46.61-.502(1). While he could not refuse to take the blood test, the denial of counsel denied him an opportunity to gather exculpatory evidence and is therefore prejudicial.

The majority further distinguishes this case from *Kruger* based on the nature of the crimes charged. Majority, at 164. The majority states that because the blood test is mandatory in a vehicular homicide case, Schulze's right to counsel was not affected. This ignores our holding in *Turpin.* In *Turpin,* we held that an accused must be apprised of the right to independent testing regardless of the fact that he has no right to refuse the mandatory blood test. 94 Wn.2d at 826. Similarly, an accused must be provided access to counsel prior to the mandatory blood test, regardless of the fact that he cannot refuse the test. As *Heater* and *Turpin* make clear, the accused needs access to counsel in order to protect his right to gather potentially exculpatory evidence. Providing access to counsel does not interfere with, and is not inconsistent with, mandatory testing.

The majority's analysis of the facts betrays some confusion about what is at stake here. The majority accurately states that the officers refused to let Schulze use the telephone until 1 a.m., over an hour after the blood was drawn. Majority, at 157. But the majority defends its denial of the right to counsel on the grounds that Schulze was not prejudiced because he was not denied "helpful advice". Majority, at 164. The defendant here was denied the right to "helpful advice" in that he was denied an opportunity to gather exculpatory evidence. While a defendant has no right to have his attorney present at the test, he does, however, have the right to consult with his distant attorney by phone. *State v. Staeheli,* 102 Wn.2d at 307, 309. The police denied Schulze that right. Compliance with our precedent does not conflict with the police's right to administer a timely test.

The majority states that RCW 46.20.308(3) is a substantive matter which cannot be amended by a procedural court rule. Majority, at 160–61. However, in *State v. Smith,* 84 Wn.2d 498, 527 P.2d 674 (1974), we confronted a statute requiring a judge to fix bail upon conviction pending appeal. This statute conflicted with a court rule requiring release without bail unless the court finds a substantial danger or risk of flight. We reaffirmed our power to promulgate rules of procedure, and abrogated the statute. *Smith,* at 501–02. The statute authorizing mandatory blood testing is a procedural statute, used to obtain evidence. The majority simply fails to recognize that the court can require notification of counsel without abrogating the mandatory nature of the blood test. *See Nearing v. Golden State Foods Corp.,* 114 Wn.2d 817, 821, 792 P.2d 500 (1990) (court rules supersede procedural statute in event of a conflict; statute and rule should be harmonized when possible); *Petrarca v. Halligan,* 83 Wn.2d 773, 776, 522 P.2d 827 (1974) (court rules supersede conflicting procedural statute); *State v. Smith, supra.*

In addition, the majority states that Schulze waived his right to counsel by keeping silent when his rights were first

read to him. Such a statement is in direct conflict with this court's holding that "a valid waiver will *not* be presumed simply from the silence of the accused after warnings are given". (Italics mine.) *State v. Adams,* 76 Wn.2d 650, 670, 458 P.2d 558 (1969) (quoting *Miranda v. Arizona,* 384 U.S. 436, 485, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)), *rev'd,* 403 U.S. 947, 29 L. Ed. 2d 855, 91 S. Ct. 2273 (1971); *State v. Blanchey,* 75 Wn.2d 926, 933, 454 P.2d 841 (1969), *cert. denied,* 396 U.S. 1045 (1970); *State v. Davis,* 73 Wn.2d 271, 286, 438 P.2d 185 (1968); *Ritchie v. Rhay,* 63 Wn.2d 508, 387 P.2d 967 (1963). In each of these cases we required that a waiver of a constitutional right must be made knowingly, voluntarily, and intelligently.

Schulze's rights were read to him at 11:14 p.m. and again at 11:23 p.m. It was during this time period that he was informed of the blood test, and it was upon learning of the test that he requested he be allowed to speak to his attorney. An intelligent waiver may not be presumed from the fact that Schulze was silent for a few minutes. The majority is mistaken in saying that Schulze waived his right to counsel.

In short, the majority silently overrules many of our major decisions governing the right to counsel for alcohol related offenses. It also endangers precedent governing our authority to promulgate and interpret court rules. Schulze had the right to call his attorney before the blood test was taken. We must reverse and provide the remedy dictated by the majority decision filed this year in *Kruger*.

SMITH, J., concurs with UTTER, J.

Reconsideration denied July 15, 1991.