[No. 55829–9.   En Banc.   January 10, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICK M. CURRAN, *Appellant.*

*Tom P. Conom; Doherty, Doherty & Ritchie* and *Craig A. Ritchie,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Alfred P. Gehri, Deputies,* for respondent.

DORE, J.—Patrick M. Curran appeals his convictions on two counts of vehicular homicide.[1] Curran raises numerous issues regarding the blood test mandated by RCW 46.20-.308(3) when a driver is suspected of committing vehicular homicide while under the influence of or affected by intoxicating alcohol or drugs. These include: (1) whether the blood draw taken by medical personnel for medical purposes precluded a second blood draw pursuant to RCW 46.20.308(3); (2) whether blood alcohol evidence was admissible to prove vehicular homicide at the time of Curran's arrest; (3) whether the State met its burden of establishing Curran's blood sample and the test chemicals were free from adulteration; (4) whether Curran was entitled to a jury instruction on reckless driving; (5) whether the taking of the blood sample violated Const. art. 1, § 7; (6) whether the trial judge erred in sentencing Curran without considering the deaths of two people in the same vehicle as constituting the same criminal conduct; and (7) whether the taking of the mandatory blood test violated Curran's rights under Const. art. 1, § 7 and § 9. We affirm Curran's conviction but remand for resentencing.

## FACTS

Patrick M. Curran is 41 years old and has been a diabetic for 20 years. He receives insulin continuously throughout the day by means of an insulin infusion pump. At one time Curran experienced frequent low blood sugar episodes during which he would have "fuzziness of thinking, some confusion". Report of Proceedings, at 947. These episodes occurred without warning and when not corrected by the consumption of sugar caused Curran to lapse into a coma.

---

[1]This case was consolidated for argument with *State v. Schulze,* 116 Wn.2d 154, 804 P.2d 566 (1991) because Curran and appellant Michael Walter Schulze make several identical arguments. These common arguments are addressed in *State v. Schulze, supra.*

Dr. Paul Fredlund, who has been Curran's treating physician for 13 years, testified that the symptoms of low blood sugar and of intoxication can be identical. Since Curran began using the insulin pump in 1981, he has had two or three episodes of low blood sugar. These episodes were not foreseeable.

On June 3, 1987, Curran, who was employed as the municipal attorney for Silver Lake Water District, and four of his colleagues had lunch. These colleagues included two district commissioners, its general manager, and engineer. The five ate at a restaurant in Snohomish. One person left after lunch. The others, including Curran, remained until almost 5 p.m. Their credit tab for the afternoon showed a total of 52 drinks purchased. This included several drinks purchased for other bar patrons and excluded some paid for in cash.

Sherry Crawford was the bartender who served the group. At approximately 2:30 p.m., she noticed Curran staring at the olives in his drink and intently poking at them. Crawford testified that she then started serving him only water with olives. Crawford also testified that one of the group members told her to serve Curran water and Curran would never notice. The individual, Rod Keppler, denied giving this instruction to Crawford. Crawford further stated that Curran consumed four alcoholic beverages during the afternoon, all before 2:30 p.m. At approximately 5 p.m., Curran and the three remaining group members left the bar in Curran's car. As Curran approached Highway 9, another driver observed him swerve off the road, onto the gravel two or three times, and drive in excess of the speed limit. One mile from Highway 9, on Marshland Road, Curran encountered a 90–degree turn and drove his car off the road where it struck an embankment and flipped into a ditch. The collision killed two of Curran's passengers.

Trooper Grant Hulteen of the Washington State Patrol responded to the collision. After Trooper Hulteen smelled alcohol on Curran's breath, he arrested Curran at the scene for vehicular homicide. The treating paramedic, Kelly

Downs, took a blood sample which the trial court ruled was for medical purposes. The excess blood was turned over to the trooper at his request. The trooper first read Curran his *Miranda* rights and then the "special evidence warning", telling Curran he had the right to additional tests at his own expense. Downs then withdrew a second blood sample. This second blood draw was later tested at the State Toxicology Lab using gas chromatography. Two tests were conducted; the first yielded a result of .18 percent blood alcohol and the second, .17 percent. A driver is considered to be under the influence if his blood alcohol level is .10 percent or greater. Curran's was almost twice this limit.

At trial, Curran testified that his behavior on the afternoon of the collision was the result of a miscalculated insulin dosage which resulted in a low blood sugar state. He maintained the insulin overdose had caused a low blood sugar state. However, Curran's blood sugar level within one–half hour of the collision was much higher than normal.

Curran testified to remembering an occasion during the early afternoon when he was asked if he wanted another drink. He was not able to formulate an answer to the question. He was also unable to remember getting in his car or anything about the accident.

Trooper Hulteen testified that at the scene Curran's eyes were watery and bloodshot and there was a strong odor of intoxicants on his breath. Paramedic Downs testified that Curran did not seem completely oriented and was unable to say where he was or to recall events.

Dr. Fredlund testified that when he examined Curran 5 days after the collision, Curran told him his blood sugar at the time of the collision had been abnormally high and that his blood alcohol level had been measured at .20 percent. In response to Curran's high blood sugar reading, Fredlund testified that a diabetic can go from having a low blood sugar level to a high blood sugar level very quickly over a period of hours.

Curran was convicted by a jury on two counts of vehicular homicide. He was sentenced to 26 months in prison on each count to be served concurrently.

## STATUTORY FRAMEWORK

The statutory scheme governing the offense of vehicular homicide is set forth in *State v. Schulze*, 116 Wn.2d 154, 804 P.2d 566 (1991), which we incorporate herein. The most pertinent statute is RCW 46.20.308, which provides in relevant part:

(1) Any person who operates a motor vehicle within this state is deemed to have given consent, . . . to a test or tests of his or her *breath* or *blood* for the purpose of determining the alcoholic content of his or her breath or blood if arrested for any offense where, at the time of the arrest, the arresting officer has reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor.

(2) . . . The officer shall inform the person of his or her right to refuse the breath or blood test, and of his or her right to have additional tests administered by any qualified person of his or her choosing as provided in RCW 46.61.506. The officer shall warn the driver that (a) his or her privilege to drive will be revoked or denied if he or she refuses to submit to the test, and (b) that his or her refusal to take the test may be used in a criminal trial.

(3) Except as provided in this section, the test administered shall be of the breath only. If an individual . . . is under arrest for the crime of vehicular homicide . . . a *breath* or *blood* test may be administered without the consent of the individual so arrested.

(Italics ours.)

## ANALYSIS

### I

Curran argues that the taking of two evidentiary blood samples by paramedics was not authorized by RCW 46.20-.308(3) and requires reversal of his convictions. We affirm the trial court's holding that the first blood draw was for routine medical purposes. This holding was supported by unrebutted testimony of the paramedic who drew the blood.

Moreover, Curran was in no way prejudiced because two samples were taken. Results of the first test were not offered as evidence, and the trial judge granted a motion to exclude any reference to the first test or to the results of its analysis. Thus, the taking of two blood samples was not prejudicial to Curran.

II

Curran next argues that amendments to RCW 46.61.502 and RCW 46.61.506 made blood alcohol evidence irrelevant and inadmissible to prove vehicular homicide at the time of his arrest. We believe Curran misconstrues the intent and the effect of the amendments. We hold this evidence was properly admitted.

Effective June 11, 1986, Washington's driving under the influence statute, RCW 46.61.502, was amended. Prior to that date, a defendant was guilty per se of the crime of driving under the influence if his *blood* alcohol level was higher than .10 percent. Former RCW 46.61.502(1). The amendment to former RCW 46.61.502 changed this per se violation of the statute to apply to a defendant's driving with "0.10 grams or more of alcohol per two hundred ten liters of *breath* . . .". (Italics ours.) Laws of 1986, ch. 153, § 2, p. 481. The reason for this change was to make convictions easier by obviating the need to translate breath alcohol test results into blood alcohol standards. *State v. Brayman*, 110 Wn.2d 183, 187, 751 P.2d 294 (1988).[2]

The 1986 amendment left unchanged former RCW 46.61.502(2) and (3).[3] Thus, while the statutory crime of driving under the influence per se changed in 1986, a defendant could always be prosecuted for the non–per se offenses of driving while "under the influence of or affected

---

[2]The Legislature again amended the statutes effective July 26, 1987 to reestablish the .10 percent blood alcohol per se standard as an alternative offense in addition to the breath alcohol per se offense enacted in 1986. *See* Laws of 1987, ch. 373, §§ 2, 4. The 1987 amendments are not at issue in this appeal.

[3]These subsections are now codified as RCW 46.61.502(3) and (4).

by intoxicating liquor or any drug" or while "under the combined influence of or affected by intoxicating liquor and any drug."

RCW 46.61.506, the evidence admissibility statute, was also amended in 1986. Before 1986, former RCW 46.61-.506(1) referred to alcohol in a person's *blood*. If the *blood* test showed a lower than .10 percent alcohol level, this was evidence that could be used "with other competent evidence" in establishing a non–per se driving under the influence violation under former RCW 46.61.502(2) or (3). The 1986 amendment changed this *blood* reference to *blood* or *breath*. Significantly, RCW 46.61.506(2) has consistently provided in part that:

> The foregoing provisions of this section [referring to evidence of the per se crime of driving under the influence] shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of intoxicating liquor or any drug.

■■ Curran argues these 1986 amendments to the driving under the influence and evidence admissibility statutes rendered blood alcohol evidence irrelevant and inadmissible to prove vehicular homicide at the time he was arrested in June 1987. This argument is not convincing. To begin with, the result Curran suggests is not consistent with the Legislature's intent in amending the statutes to make convictions easier. *State v. Brayman,* 110 Wn.2d at 187. It was certainly not the Legislature's intent to make blood alcohol evidence inadmissible for any purpose. *See Brayman,* 110 Wn.2d at 190 ("'[s]hort of performing a test of brain tissue in an autopsy, a test of the blood is the most *direct* possible measure of a person's alcohol level.'").

In addition, RCW 46.20.308(3), which was not amended, provides that a driver suspected of vehicular homicide may be subjected to either a breath *or* a blood test without his consent. If blood evidence were inadmissible, this statutory provision would be rendered nonsensical. *See State v. Fjermestad,* 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

Finally, the language Curran relies on refers only to the per se crime of driving while under the influence. Curran was not charged with the per se crime. RCW 46.61.506(2) specifically indicates constraints associated with the per se crime shall not limit the use of "other competent evidence" when a per se conviction is not sought. *See, e.g., State v. McElroy*, 553 So. 2d 456, 458 (La. 1989) (results of blood alcohol test not administered in accordance with statute admissible but would not give rise to presumption of intoxication). The blood alcohol evidence was properly admitted.

### III

Curran next argues the State failed to present prima facie proof that the insulin and intravenous solution being administered to him at the time of his blood test could not have affected the blood test results. We hold the State met its burden of establishing the blood sample and the chemicals were free from adulteration by the substances being administered to Curran.

Washington law requires the State to show that "the test chemicals and the sample are free from adulteration which could conceivably introduce error into the results of the test." *State v. Erdman*, 64 Wn.2d 286, 287, 391 P.2d 518 (1964). Testimony by the chemist who performed the blood test established that the sample was free from contamination by the insulin and intravenous solution. Nevertheless, Curran maintains the State did not establish the insulin and intravenous could not have affected *any* blood sample. Whether the State made this showing is irrelevant, however, because *Erdman's* standards for admissibility are satisfied if the State establishes the *sample* is pure. 64 Wn.2d at 287. This was done through unrebutted testimony. Curran's argument is without merit.

### IV

Curran contends that the trial judge's failure to instruct the jury on reckless driving as a lesser included offense of vehicular homicide denied him a fair trial. We hold he was not entitled to the requested instruction.

■■ A defendant is entitled to an instruction on a lesser included offense if each of the elements of the lesser offense is a necessary element of the offense charged and the evidence supports an inference that the lesser crime was committed. *State v. Pacheco,* 107 Wn.2d 59, 68–69, 726 P.2d 981 (1986). While the lesser offense might not be a stated element of the greater offense, the lesser must at least be an "inherent characteristic" of the greater one. *State v. Workman,* 90 Wn.2d 443, 447–48, 584 P.2d 382 (1978). Thus, Curran would be entitled to a jury instruction under existing Washington law on reckless driving only if the crime of vehicular homicide could not be committed without also committing the crime of reckless driving. However, one can be convicted of vehicular homicide by "driving . . . with disregard for the safety of others" as well as by driving recklessly. RCW 46.61.520. The statute and case law clearly distinguish between these two terms in the vehicular homicide context. *See State v. Eike,* 72 Wn.2d 760, 765, 435 P.2d 680 (1967); *State v. Knowles,* 46 Wn. App. 426, 430, 730 P.2d 738 (1986).

Hence, under Washington law, reckless driving is not a lesser included offense of vehicular homicide. The trial judge did not err in refusing to give Curran's proposed jury instruction.

## V

Curran next contends the taking of his blood over his objection violated Const. art. 1, § 7. This section, which provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law", is Washington's counterpart to the fourth amendment to the United States Constitution.

This case is very similar to *State v. Judge,* 100 Wn.2d 706, 711–12, 675 P.2d 219 (1984), in both the facts and the issues raised. In *Judge,* a driver struck four children on bicycles, killing three. Her blood level measured .17 percent alcohol. We held that the blood draw to which she was

subjected[4] did not violate Const. art. 1, § 7. 100 Wn.2d at 711–12.

In *Judge*, however, the defendant did not object to the taking of her blood. Curran maintains he objected to the blood draw by refusing to sign the acknowledgment of the "special evidence warning".[5] Conceding for argument's sake that Curran timely objected to the taking of his blood, we hold Const. art. 1, § 7 was not violated.

■■ The blood test given Curran was a search and seizure under the Fourth Amendment and Const. art. 1, § 7. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402, 1412 (1989); *Judge*, 100 Wn.2d at 711–12. However, both of these provisions prohibit only unreasonable searches and seizures. 489 U.S. at 619; 100 Wn.2d at 711–12. The blood test in this case was reasonable only if there was a clear indication that it would reveal evidence of Curran's intoxication, and it was a reasonable test performed in a reasonable manner. 100 Wn.2d at 711–12 (citing *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966)). *See also Skinner v. Railway Labor Executives' Ass'n, supra* (upholding the warrantless blood testing without individualized suspicion of private railroad employees involved in certain accidents).

The first question is whether there was a clear indication that evidence of Curran's intoxication would be found when the trooper ordered the blood test. As already demonstrated, the evidence of Curran's intoxication was overwhelming. Trooper Hulteen testified that Curran smelled of alcohol and his eyes were watery and bloodshot. The paramedic testified that Curran was disoriented and unable to

---

[4]At the time *Judge* was decided, the statutory provision for a mandatory blood draw was found in RCW 46.20.308(1).

[5]An officer must warn a driver before administering a chemical test of the driver's breath or blood of, among other things, his right to have additional tests performed. RCW 46.20.308(2). This is known as a "special evidence warning". A driver given the warning is customarily provided a form to sign acknowledging he received the warning. Curran was given the form but did not sign it.

say where he was or to recall events. Curran himself stated he did not remember getting into his car or anything about the collision. We hold that the record reveals overwhelming evidence that Curran was under the influence of alcohol at the time of the accident.

We next address the reasonableness of the test. The facts in the instant case are similar to those in *Schmerber v. California, supra,* upon which we relied in *Judge.* In *Schmerber,* even though the defendant objected to the blood test on his attorney's advice, the United States Supreme Court held the blood test was a reasonable one:

> Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. Such tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.

(Footnote and citations omitted.) *Schmerber,* at 771. Finally, Curran's blood test was performed in a reasonable manner by a trained paramedic. Accordingly, we hold the taking of Curran's blood pursuant to RCW 46.20.308(3) did not violate Const. art. 1, § 7.

## VI

Curran argues the trial judge erred in sentencing him without considering the deaths of two people in the same vehicle as constituting the same criminal conduct. If two offenses constitute the same criminal conduct, they are considered one crime for sentencing purposes. RCW 9.94A-.400(1)(a). We agree and remand for proper resentencing.

Effective July 26, 1987, an amendment to RCW 9.94A-.400(1)(a) clarified that: (1) generally, two or more crimes involving separate victims cannot constitute "the same criminal conduct"; but (2) in cases of vehicular homicide, causing the death of multiple victims in one vehicle can constitute "the same criminal conduct". Curran contends the trial judge erred in not relying on the vehicular homicide proviso of the amendment when sentencing him.

The amendment to RCW 9.94A.400(1)(a) is not expressly applicable to Curran's sentence because he committed his crimes before its effective date. *State v. Jones,* 110 Wn.2d 74, 82, 750 P.2d 620 (1988). Curran claims the amendment is a clarifying one and should be applied retroactively. We agreed with this analysis in *State v. Dunaway,* 109 Wn.2d 207, 216 n.6, 743 P.2d 1237, 749 P.2d 160 (1987). However, *Dunaway* involved the first part of the amendment, which provides that "the same criminal conduct" cannot involve separate victims. Because an earlier appellate decision had held that crimes involving separate victims could constitute the same criminal conduct, *see State v. Edwards,* 45 Wn. App. 378, 725 P.2d 442 (1986), this court refused to apply the amendment retroactively. *See also Washington Waste Sys., Inc. v. Clark Cy.,* 115 Wn.2d 74, 794 P.2d 508 (1990) (clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the judiciary).

■ The trial judge apparently relied on the rationale in *Dunaway* in refusing to consider the two homicides as the same criminal conduct for sentencing purposes. However, the part of the amendment upon which Curran relies, the vehicular homicide proviso, is completely consistent with *Edwards.* We hold that the amendment to RCW 9.94A-.400(1)(a) should be applied retroactively.

Moreover, even if we did not apply the amendment retroactively, the *Edwards* case was the existing case law at the time of Curran's arrest in June 1987. Either way, the two vehicular homicides should have been considered the same criminal conduct for sentencing purposes.

## VII

■ Finally, Curran raises two other arguments which can be disposed of summarily. First, he contends that the admission of the results of the mandatory blood test compelled him to give evidence against himself in violation of article 1, section 9 of the Washington Constitution. This

court has previously held that the compelled production of physical, nontestimonial evidence, such as the results of blood and breath tests, does not violate article 1, section 9. *See State v. Wethered,* 110 Wn.2d 466, 470–71, 755 P.2d 797 (1988); *State v. Franco,* 96 Wn.2d 816, 829, 639 P.2d 1320 (1982); *State v. Moore,* 79 Wn.2d 51, 57, 483 P.2d 630 (1971). Curran's argument is without merit.

■ Curran also argues that the blood test violated his right to privacy under article 1, section 7 of the Washington Constitution. In some circumstances, this court has interpreted the state constitutional right to privacy more broadly than its federal counterpart, the Fourth Amendment, has been interpreted. *See, e.g., State v. Gunwall,* 106 Wn.2d 54, 61–62, 720 P.2d 808, 76 A.L.R.4th 517 (1986). However, this is not such a case. In *State v. Judge,* 100 Wn.2d 706, 711–12, 675 P.2d 219 (1984), we held that neither the state nor the federal constitutional right to privacy prevents a mandatory blood test in a vehicular homicide case. This argument is also without merit.

## CONCLUSION

In conclusion, we affirm Curran's convictions but remand for resentencing in accordance with our holding that Curran's two vehicular homicide convictions should have been considered the same criminal conduct for sentencing purposes.

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and GUY, JJ., concur.

UTTER, J. (concurring)—I agree with the majority's resolution of the claims presented here. I write separately because I do not agree with the analysis of the state constitutional law claims. The majority fails to adequately discuss the claims raised under article 1, section 9 and equates article 1, section 7 with the fourth amendment to the United States Constitution.

## I

*State v. Moore,* 79 Wn.2d 51, 483 P.2d 630 (1971) and *State v. Franco,* 96 Wn.2d 816, 829, 639 P.2d 1320 (1982) settle Curran's claim that a compelled blood test violates article 1, section 9's limits on self–incrimination. Curran argues that the self–incrimination privilege should not be limited to items of a testimonial nature, relying principally on the language of article 1, section 9, which states that "No person shall be compelled in any criminal case to give *evidence* against himself". (Italics mine.) This language contrasts sharply with the Fifth Amendment, which only prohibits compelling a person "to be a *witness* against himself". (Italics mine.)

While Curran's arguments might be persuasive as an original matter, precedent compels their rejection. Justice Rosellini raised most of Curran's specific arguments under article 1, section 9 in his *Moore* dissent, but the majority rejected them. *See Moore,* 79 Wn.2d at 58–68 (Rosellini, J., dissenting). Moreover, Justice Rosellini's dissent in *Moore* discussed most of the factors later identified as crucial to state constitutional analysis in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

## II

I agree that article 1, section 7 does not protect Curran from a blood search in the context of a homicide. We have held, however, that article 1, section 7 protects privacy rights more broadly than the Fifth Amendment. *See, e.g., State v. Boland,* 115 Wn.2d 571, 800 P.2d 1112 (1990); *State v. Gunwall, supra.*

The United States Supreme Court employs a balancing test to determine whether the invasion of a defendant's body is unreasonable under the Fourth Amendment. *See Winston v. Lee,* 470 U.S. 753, 84 L. Ed. 2d 662, 105 S. Ct. 1611 (1985) (court–ordered surgery to remove bullet sought as evidence held unconstitutional). The Court balances "the individual's interests in privacy and security . . . against society's interests in conducting the procedure." *Winston,*

470 U.S. at 760. Because the societal interest in preventing homicides is so great, article 1, section 7 allows a blood test when a person is killed, if authorized by legislation. Because of the special solicitude of article 1, section 7 for the privacy rights of individuals, I doubt very much whether such an invasion of the body would be permissible in less severe circumstances. *See generally* Comment, *The Origin and Development of Washington's Independent Exclusionary Rule: Constitutional Right and Constitutionally Compelled Remedy,* 61 Wash. L. Rev. 459 (1986); *Boyd v. United States,* 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524 (1886) (holding that production of a defendant's private papers violated the Fifth Amendment just prior to the adoption of the Washington State Constitution); *State v. Gibbons,* 118 Wash. 171, 203 P. 390 (1922) (following *Boyd*); Const. art. 1, § 32 ("A frequent recurrence to fundamental principles is essential to the security of individual right and the perpetuity of free government"); Laws of 1965, 1st Ex. Sess., ch. 155, § 60 (expressing Legislature's former belief that nonconsensual blood tests for DWI suspects would be unconstitutional).

SMITH, J., concurs with UTTER, J.

Reconsideration denied May 16, 1991.