205 P.3d 914 (2009)
STATE of Washington, Respondent,
v.
Alejandro GARCIA-SALGADO, Appellant.
No. 60823-1-I.
Court of Appeals of Washington, Division 1.
April 13, 2009.
*915 Catherine Marie McDowall, King County Prosecutor's Office, Seattle, WA, for Respondent.
Oliver Ross Davis, Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Appellant.
Alejandro Garcia Salgado, Federal Way, WA, pro se.
GROSSE, J.
¶ 1 The collection of biological samples for DNA (deoxyribonucleic acid) identification purposes may occur during discovery under pertinent court rules that require obtaining a court order based on probable cause. And, the record in this case provides ample factual support for the trial court's order. The trial court is affirmed.

FACTS
¶ 2 Alejandro Garcia-Salgado was charged with first degree rape of a child for raping 11-year-old P.H. on November 25, 2006.[1] The State filed a sworn certification for determination of probable cause in support of the charges.[2] Prior to trial, the State moved for an order requiring Garcia-Salgado to submit to a cheek swab for DNA testing.
¶ 3 Garcia-Salgado objected, and the court set that matter over for hearing the following week. At that hearing, the State informed the court that a rape kit had been performed on P.H. The prosecutor indicated that she had spoken with the lab technician personally and requested that a DNA analysis be performed.
¶ 4 Defense objected on the basis of Garcia-Salgado's privacy interest, arguing that the doctor who had examined P.H. "found no actual, physical evidence of penile-vaginal penetration." In response, the State argued that even if there was no actual penetration, there still could have been DNA evidence left in her vaginal area. The court inquired into whether the swabs were analyzed to find DNA other than the alleged victim's. The prosecutor responded:
Your Honor, the way it works is: the lab does a presumptive test, and then, based on the results of the presumptive test, determines whether or not it's appropriate to take the next step, the most expensive step, of doing a DNA test.
. . . .
I believe the presumptive tests were done, and there was something on them; I couldn't say exactly what at this point in time.
The trial court found the DNA swab to be minimally intrusive and ordered the taking of the sample under CrR 4.7(b)(2)(vi).
¶ 5 A jury subsequently found Garcia-Salgado guilty of first degree rape of a child as charged. Garcia-Salgado appeals.

ANALYSIS
¶ 6 The taking of DNA constitutes a search and seizure under both the United States and Washington State constitutions.[3] In State v. Gregory,[4] the Washington Supreme Court held that a court order issued pursuant to CrR 4.7(b)(2)(vi) for a blood draw complies with the Fourth Amendment so long as it is supported by probable cause. *916 Citing the seminal case, Schmerber v. California,[5] the Gregory court listed three requirements that need to be established to determine whether a blood draw is reasonable: (1) there must be a clear indication that in fact the desired evidence will be found; (2) the chosen test must be reasonable; and (3) such test must be performed in a reasonable manner.[6] Here, as in Gregory, Garcia-Salgado does not challenge the latter two factors  only the first  that there is no indication that his DNA would be found.
¶ 7 Garcia-Salgado argues that the taking of the DNA was illegal because it was a "warrantless search" and, therefore, the evidence obtained as a result should have been suppressed at trial. We disagree. There was evidence that Garcia-Salgado raped P.H. and that his DNA information would match that obtained from the victim's rape kit. The victim and several members of her family identified Garcia-Salgado as the rapist. He was arrested as he tried to flee the scene. A rape kit examination was performed on the victim within hours of the crime in part to obtain any potential DNA evidence. P.H.'s clothing was tested by the forensic scientists and genetic material was discovered on the clothing. The State sought Garcia-Salgado's DNA for the particularized purpose of comparing it with that found on P.H.'s clothing. This information coupled with the prosecuting attorney's representations to the court, was sufficient to establish probable cause under the facts and circumstances of this case.
¶ 8 Garcia-Salgado argues that a separate search warrant is necessary in this instance, because our courts have held that it is the warrant that provides the "authority of law" to conduct such a search.[7] But here, the authority of law is provided by CrR 4.7(b)(2), which provides:
Notwithstanding the initiation of judicial proceedings, and subject to constitutional limitations, the court on motion of the prosecuting attorney or the defendant, may require or allow the defendant to:
. . . .
(vi) permit the taking of samples of or from the defendant's blood, hair, and other materials of the defendant's body including materials under the defendant's fingernails which involve no unreasonable intrusion thereof.
All that is missing here is a specific finding by the trial court that there was probable cause. It is clear from the record, however, that at the time the court issued its CrR 4.7 order, it had been presented with sufficient evidence demonstrating probable cause. While more specific findings would be helpful, the court properly ordered the collection of a DNA sample from Garcia-Salgado.
¶ 9 The judgment and sentence is affirmed.
WE CONCUR: SCHINDLER, C.J., and LAU, J.
NOTES
[1] Garcia-Salgado was also charged with a violation of the Uniform Controlled Substances Act (VUCSA), RCW 69.50.4013, for possession of cocaine found during a search incident to arrest. He pleaded guilty to that charge prior to his trial for rape.
[2] This formed the basis for the court's issuance of a warrant that the State submitted in its request to supplement the record, which we granted.
[3] U.S. CONST. amend IV; WASH. CONST. art I, § 7.
[4] 158 Wash.2d 759, 822, 147 P.3d 1201 (2006).
[5] 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
[6] Gregory, 158 Wash.2d at 822-23, 147 P.3d 1201
[7] State v. Ladsen, 138 Wash.2d 343, 350, 979 P.2d 833 (1999) (citing City of Seattle v. Mesiani, 110 Wash.2d 454, 457, 755 P.2d 775 (1988)).