240 P.3d 153 (2010)
STATE of Washington, Respondent,
v.
Alejandro GARCIA-SALGADO, Petitioner.
No. 83156-4.
Supreme Court of Washington, En Banc.
Argued June 24, 2010.
Decided October 7, 2010.
*154 Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Petitioner.
James Morrissey Whisman, King County Prosecutor's Office, Seattle, WA, for Respondent.
FAIRHURST, J.
¶ 1 Alejandro Garcia-Salgado challenges his conviction for first degree rape of a child. He argues the State violated the Fourth Amendment to the United States Constitution and article I, section 7 of the state constitution when it procured his deoxyribonucleic acid (DNA) by cheek swab pursuant to a court order. Specifically, Garcia-Salgado asserts that the seizure was unlawful because it was made without a warrant and without probable cause based on oath or affirmation. The State contends there is sufficient evidence in the record to support a finding of probable cause and the order met the requirements of the Fourth Amendment *155 and article I, section 7 because it was entered by a court pursuant to CrR 4.7(b)(2)(vi) after a contested hearing.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 In November 2006, Garcia-Salgado was visiting his friend Pablo Cruz-Guzman at the home of Cruz-Guzman's mother-in-law, Joylene Simmons. Also in the home were Simmons' children, including 11 year old P.H. Cruz-Guzman and Garcia-Salgado spent the evening drinking beer in the garage. At some point, Garcia-Salgado asked Cruz-Guzman to drive him home. Cruz-Guzman wanted to go to the store first, and told Garcia-Salgado to go sleep in the living room. Garcia-Salgado went inside to the living room while Cruz-Guzman and some others went to the store to get more beer.
¶ 3 While Cruz-Guzman and the others were away, Garcia-Salgado entered the room in which P.H. was sleeping. According to P.H., Garcia-Salgado climbed into her bed, removed her pajama pants, laid on top of her "going up and down," and that she felt the part of his body "between his legs" against her "private spot." Report of Proceedings (RP) (Sept. 25, 2007) at 60-62. Afraid, P.H. remained silent throughout the ordeal. After Garcia-Salgado left the room, P.H. told others in the house what had happened. Word quickly reached P.H.'s mother, who called the police.
¶ 4 Auburn Police Officer Theodus Millan responded to the call. He arrived at the house in time to see Cruz-Guzman and the others return from the store. While waiting for another officer to arrive, Millan observed Garcia-Salgado attempting to escape through the garage window. However, Cruz-Guzman and another family member apprehended and restrained Garcia-Salgado until Millan could arrest him. At the Auburn jail, an inventory search of Garcia-Salgado revealed that he had cocaine in his wallet. P.H. was taken to the hospital where a rape kit was used during an examination of P.H.
¶ 5 After waiving his Miranda[1] rights, Garcia-Salgado stated through an interpreter that he "woke up" in P.H.'s bed and had kissed P.H. He denied that he was undressed or that he had sex with P.H.
¶ 6 Garcia-Salgado was charged with first degree rape of a child.[2] After Garcia-Salgado was charged, but prior to trial, the State sought a sample of Garcia-Salgado's DNA pursuant to CrR 4.7(b)(2)(vi). At the CrR 4.7 hearing, Garcia-Salgado objected to giving a sample of his DNA on privacy grounds and argued that because the doctor who treated P.H. found no indication of penetration, the DNA request was nothing more than a "fishing expedition." RP (Mar. 27, 2007) at 3. The court inquired into whether DNA other than the victim's had been discovered in the rape kit. Counsel for the State responded, "Your Honor, the way it works is: the lab does a presumptive test, and then, based on the results of the presumptive test, determines whether or not it's appropriate to take the next step, the most expensive step, of doing a DNA test." Id. at 4-5. She continued, "I believe the presumptive tests were done, and there was something on them; I couldn't say exactly what at this point in time."[3]Id. at 5.
¶ 7 Pursuant to CrR 4.7(b)(2)(vi), the trial court ordered Garcia-Salgado to submit to cheek swabs. The one page order reads:
The above-entitled Court, having heard a motion regarding taking of DNA sample of defendant.
IT IS HEREBY ORDERED that a DNA sample of defendant's DNA shall be taken by oral swab (DNA swab is minimally intrusive, [and] under [CrR] 4.7(b)(2)(vi) it shall be taken) [and] defendant must cooperate.
Clerk's Papers at 6.
¶ 8 The Washington State Patrol Crime Laboratory tested P.H.'s clothing and found evidence of semen on her shirt and underwear. *156 Specifically, spermatozoa were discovered on the shirt, and a protein found only in seminal fluid was found on the underwear. DNA from the sperm and seminal fluid matched the DNA profile generated from Garcia-Salgado's cheek swab. A jury found Garcia-Salgado guilty of first degree rape of a child, and the trial court sentenced him to 110 months of confinement. Garcia-Salgado appealed his conviction, arguing that the taking of his DNA constituted a warrantless search in violation of the Fourth Amendment and article I, section 7. The Court of Appeals affirmed in a published opinion, concluding that there was sufficient evidence in the record to establish probable cause to search and that CrR 4.7(b)(2)(vi) provided the "authority of law" required by article I, section 7 of the state constitution. State v. Garcia-Salgado, 149 Wash.App. 702, 706-07, 205 P.3d 914 (2009). The Court of Appeals relied on the prosecuting attorney's statement that genetic material had been discovered in the rape kit. Id. at 705-06, 205 P.3d 914. We granted Garcia-Salgado's petition for review on September 9, 2009. State v. Garcia-Salgado, 166 Wash.2d 1033, 217 P.3d 782 (2009). In a letter dated December 16, 2009, the State informed Garcia-Salgado that testing of the rape kit did not occur until after Garcia-Salgado's DNA had been taken.

II. ISSUE
¶ 9 Did the State violate the Fourth Amendment or article I, section 7 when it procured a sample of Garcia-Salgado's DNA pursuant to a court order?

III. ANALYSIS
¶ 10 By court rule, a trial court may order a criminal defendant to permit the State to take samples from the defendant's body. CrR 4.7(b)(2)(vi). However, the court's power is explicitly "subject to constitutional limitations." CrR 4.7(b)(2). Garcia-Salgado asserts that the cheek swab in this case violated the Fourth Amendment and article I, section 7 because the court's order that he submit to the cheek swab was made without probable cause and without a warrant.
¶ 11 "Generally, a trial court's decisions regarding discovery under CrR 4.7 will not be disturbed absent manifest abuse of discretion." State v. Gregory, 158 Wash.2d 759, 822, 147 P.3d 1201 (2006) (citing State v. Yates, 111 Wash.2d 793, 797, 765 P.2d 291 (1988)). However, "while the determination of historical facts relevant to the establishment of probable cause is subject to the abuse of discretion standard, the legal determination of whether qualifying information as a whole amounts to probable cause is subject to de novo review." Id. (citing In re Det. of Petersen v. State, 145 Wash.2d 789, 799-801, 42 P.3d 952 (2002)).
¶ 12 The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Similarly, article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." While the protections guaranteed by the Fourth Amendment and article I, section 7 are qualitatively different, the provisions protect similar interests. State v. Eisfeldt, 163 Wash.2d 628, 634, 185 P.3d 580 (2008). In some cases, article I, section 7 may provide greater protection than the Fourth Amendment; however, article I, section 7 "necessarily encompasses those legitimate expectations of privacy protected by the Fourth Amendment." State v. Parker, 139 Wash.2d 486, 493-94, 987 P.2d 73 (1999).
¶ 13 Generally, warrantless searches are per se unreasonable under both the Fourth Amendment and article I, section 7. State v. Garvin, 166 Wash.2d 242, 249, 207 P.3d 1266 (2009) (citing State v. Duncan, 146 Wash.2d 166, 171, 43 P.3d 513 (2002)). There are limited exceptions to the warrant requirement, and the State bears the burden of establishing that one of these narrowly drawn exceptions applies. Id. at 249-50, 207 P.3d 1266.
¶ 14 Swabbing a cheek to procure a DNA sample constitutes a search under the Fourth Amendment and article I, section 7. The United States Supreme Court has recognized "that a `compelled intrusio[n] into the *157 body for blood to be analyzed for alcohol content'" is a search. Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (alteration in original) (quoting Schmerber v. California, 384 U.S. 757, 768, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Similarly, the Court found Breathalyzer tests to "implicate[] similar concerns about bodily integrity" and constitute searches as well. Id. at 617, 109 S.Ct. 1402. We find that the swabbing of a person's cheek for the purposes of collecting DNA evidence is a similar intrusion into the body and constitutes a search for the purposes of the Fourth Amendment and article I, section 7.
¶ 15 Because a cheek swab to procure a DNA sample is a search, the search must be supported by a warrant unless the search meets one of the "`jealously and carefully drawn'" exceptions to the warrant requirement. State v. Winterstein, 167 Wash.2d 620, 628, 220 P.3d 1226 (2009) (internal quotations omitted) (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996)); Schmerber, 384 U.S. at 770, 86 S.Ct. 1826 ("Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned."). A warrant may issue only where (1) a neutral and detached magistrate (2) makes a determination of probable cause based on oath or affirmation and (3) the warrant particularly describes the place to be searched and the items to be seized. State v. Maddox, 152 Wash.2d 499, 505, 98 P.3d 1199 (2004) (citing U.S. CONST. amend. IV).
¶ 16 In the context of searches that intrude into the body, the United States Supreme Court has held that the "interests in human dignity and privacy which the Fourth Amendment protects" require three showings in addition to a warrant. Schmerber, 384 U.S. at 769-70, 86 S.Ct. 1826. First, there must be a "clear indication" that the desired evidence will be found if the search is performed. Id. at 770, 86 S.Ct. 1826. Second, the method of searching must be reasonable. Id. at 771, 86 S.Ct. 1826. Third, the search must be performed in a reasonable manner. Id. at 772, 86 S.Ct. 1826.
¶ 17 The State argues that the search in this case need not satisfy the warrant requirement; instead, the State asserts the search should be upheld after merely establishing that there was probable cause and that the three Schmerber requirements were met. For this proposition, the State relies primarily on State v. Judge, 100 Wash.2d 706, 675 P.2d 219 (1984), and State v. Curran, 116 Wash.2d 174, 804 P.2d 558 (1991), abrogated on other grounds by State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997). Judge and Curran both involved blood draws from suspects in alcohol related traffic fatalities. Judge, 100 Wash.2d at 708, 675 P.2d 219; Curran, 116 Wash.2d at 177, 804 P.2d 558. In holding that a warrant was not required, the Judge court relied on the fact that it was impracticable to seek a warrant for a blood draw where the defendant's body was constantly eliminating the evidence of alcohol in his blood. 100 Wash.2d at 712, 675 P.2d 219 (citing Schmerber, 384 U.S. at 770-71, 86 S.Ct. 1826). The Curran court relied on Judge for the conclusion that a warrant was not required and, impliedly, adopted the Judge court's reasoning. Curran, 116 Wash.2d at 184, 804 P.2d 558 (citing Judge, 100 Wash.2d at 711-12, 675 P.2d 219). Unlike alcohol, DNA is not eliminated from the body over time. Consequently, it is not impracticable to seek a warrant for a search of DNA. Therefore, the warrant exception available in Judge and Curran is not available here.
¶ 18 While a cheek swab for DNA is a search and requires a warrant absent the existence of an exception, the warrant requirement of the Fourth Amendment and article I, section 7 may be satisfied by a court order. Normally, a warrant in Washington State is issued under CrR 2.3, but neither the state constitution nor federal constitution limits warrants to only those issued under CrR 2.3. A court order may function as a warrant as long as it meets constitutional requirements. E.g., United States v. Mendez-Jimenez, 709 F.2d 1300, 1302 (9th Cir. 1983). In the case of a search that intrudes into the body, such an order must meet both the requirements of a warrant and the additional requirements announced in Schmerber. *158 Therefore, to support a search that intrudes into the body, a CrR 4.7(b)(2)(vi) order must be entered by a neutral and detached magistrate, must describe the place to be searched and items to be seized, must be supported by probable cause based on oath or affirmation, and there must be a clear indication that the desired evidence will be found, the method of intrusion must be reasonable, and the intrusion must be performed in a reasonable manner.
¶ 19 In Gregory, we upheld a search that intruded into the body made pursuant to a CrR 4.7 order. Gregory was convicted of three counts of first degree rape and, in a separate trial, one count of aggravated first degree murder. Gregory, 158 Wash.2d at 777, 147 P.3d 1201. Prior to his conviction on the rape charges, the trial court ordered Gregory to permit the State to take blood samples for the purpose of comparing Gregory's DNA with the DNA evidence discovered in a rape kit examination of the victim.[4]Id. at 820, 147 P.3d 1201. On appeal, Gregory challenged the collection of his DNA. Id. at 821-22, 147 P.3d 1201.
¶ 20 We upheld the search as valid because the order met the requirements of a search warrant. First, a sworn declaration provided sufficient evidence to establish probable cause to search. Id. Second, there was no question that the judge who entered the order was a neutral and detached magistrate. Finally, an order for the seizure of blood for DNA sampling necessarily describes the place to be searched and the item to be seized. Id. at 820, 147 P.3d 1201. The blood draw also met the Schmerber requirements for searches that intrude into the body. First, Gregory did not challenge the reasonableness of the blood draw or the manner in which it was performed. Id. at 822-23, 147 P.3d 1201. Second, the evidence established a clear indication that Gregory's DNA would match the DNA recovered in the rape kit. See id. at 822-825, 147 P.3d 1201. Because the order met the requirements of a valid warrant, and the bodily intrusion met the additional requirements of Schmerber, the search was constitutional.
¶ 21 To satisfy constitutional requirements, the order in this case must meet the same requirements as the order in Gregory. Here, the order was entered by a neutral and detached magistrate, and it sufficiently described the place to be searched and item to be seized. Additionally, Garcia-Salgado has not argued that the oral swab was an unreasonable method of procuring his DNA or that the swab was performed unreasonably. Therefore, the only remaining questions are whether there was probable cause to search supported by oath or affirmation and whether there was a clear indication that the desired evidence would be found. As we find the probable cause determination dispositive, we do not address whether the record clearly indicates that Garcia-Salgado's DNA would match any DNA recovered from the rape.
¶ 22 "When adjudging the validity of a search warrant, we consider only the information that was brought to the attention of the issuing judge or magistrate at the time the warrant was requested." State v. Murray, 110 Wash.2d 706, 709-10, 757 P.2d 487 (1988) (citing Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565 n. 8, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)). Unfortunately, the record in this case does not establish what evidence was presented to the trial court before the court issued the CrR 4.7(b)(2)(vi) order. We know that the trial judge heard assertions from the deputy prosecuting attorney at both the March 23 and 27, 2007, hearings. However, not only were some of those assertions incorrect, none of the statements were made under oath. Therefore, the deputy prosecutor's assertions cannot support the court's determination of probable cause.
¶ 23 Other than the deputy prosecutor's assertions, it is unclear what information was brought to the attention of the trial court. The State urges us to consider the certification of probable cause in support of Garcia-Salgado's arrest, but the record does not establish that the trial judge ever read the certification. Ideally, the CrR 4.7(b)(2)(vi) *159 order itself would reference the evidence relied upon for the probable cause determination, but the order is silent, and nothing in the transcript of the record reveals what information was before the trial court when it entered the CrR 4.7(b)(2)(vi) order. Because we do not know what the trial court considered, we cannot say that probable cause supported the order. Accordingly, we cannot find that the warrant requirement has been satisfied. It is the State's burden to establish that an exception to the warrant requirement has been met. Garvin, 166 Wash.2d at 250, 207 P.3d 1266. The State has not established an exception in this case. Therefore, we reverse the Court of Appeals and remand.

IV. CONCLUSION
¶ 24 A cheek swab for DNA is a search that intrudes into the body. A search that intrudes into the body may be made pursuant to an order entered under CrR 4.7(b)(2)(vi) if the order is supported by probable case based on oath or affirmation, is entered by a neutral and detached magistrate, describes the place to be searched and the thing to be seized, and if there is a clear indication that the desired evidence will be found, the test is reasonable, and the test is performed in a reasonable manner. Here, it is unclear from the record what evidence, if any, was before the trial court when it determined probable cause. Consequently, this court cannot say that there was probable cause to search Garcia-Salgado's DNA. We reverse the Court of Appeals and remand.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, concurs in result, CHARLES W. JOHNSON, GERRY L. ALEXANDER, RICHARD B. SANDERS, TOM CHAMBERS, SUSAN OWENS, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Garcia-Salgado was also charged with, and pleaded guilty of, possession of cocaine.
[3] Both sides agree that this statement is incorrect because at the time of the hearing, the rape kit had not yet been tested.
[4] In Gregory, there were two separate blood draws. Id. at 820, 147 P.3d 1201. For the purpose of this analysis, the relevant blood draw was the one in January 2000.