# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47315-1-II |
| Respondent, | |
| v. | |
| RAFAEL GUTIERREZ MEZA, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Rafael Meza appeals the trial court's denial of his motion to vacate an ex parte order entered after he was charged with first degree theft, which required his credit union to freeze and hold his account. We hold that the trial court's order was not a search warrant or the functional equivalent of a search warrant, and therefore did not satisfy the warrant requirement for the seizure of Meza's funds. Accordingly, we reverse and vacate the trial court's order requiring that the credit union freeze and hold Meza's account.

## FACTS

In June 2014, John Armstrong spoke with the Lewis County sheriff's office and alleged that Meza had swindled money from him. Armstrong claimed that he paid Meza $75,000 to purchase Meza's asphalt plant, but then discovered that Meza already had sold the asphalt plant to someone named Cliff Mansfield.

Deputy Justin Rogers investigated Armstrong's allegations. Rogers contacted the Twin Star Credit Union and verified that Meza held an account that had received large wire transfers

recently. Rogers also learned from Mansfield that Meza recently had informed him that he was planning to go to Mexico.

Rogers served Twin Star Credit Union with a valid search warrant for Meza's account information. Meza's bank statements showed a check and four wire transfers from Mansfield totaling $105,000, with the last transfer on June 18. They also showed a single wire transfer from Armstrong in the amount of $15,000 on April 11. Meza's checking account showed that between October 2013 and June 2014, he withdrew approximately $89,000 in cash in 41 transactions involving between $3,000 and $5,000 each.

On June 27, 2014, the State charged Meza with one count of first degree theft. On the same day, the State presented an ex parte "Motion for an Order Freezing and Holding Funds" to the trial court. Clerk's Papers (CP) at 25-26. The State asserted that the funds in Meza's credit union accounts were "evidence in a felony offense." CP at 25. The State's motion was based on the probable cause affidavit filed with the information and asserted that there was "a high likelihood, based on [the affidavit regarding probable cause], that [Meza] will remove said funds and leave the country." CP at 26. The State did not request a search warrant for the credit union funds or reference CrR 2.3 in its motion.

The trial court signed an order directing Twin Star Credit Union to "freeze and hold all accounts in the name of . . . Meza . . . as evidence in a criminal proceeding, until further order of this Court." CP at 14. Neither the motion nor the order cited any legal authority for freezing Meza's accounts.

In January 2015, Meza filed a motion to vacate the trial court's order. Meza argued that there was no legal authority for the order. The State contended that the trial court could seize the fruits of a crime under CrR 2.3.

The trial court denied Meza's motion to vacate the order, ruling that there was probable cause to believe that Meza's account was related to the charged crime. The court concluded that it had the authority to freeze Meza's funds under CrR 2.3. In addition, the trial court ruled that Meza's account qualified as both evidence of a crime and the proceeds of a crime.

Meza filed a motion for discretionary review. The commissioner granted discretionary expedited review on the basis that the trial court committed probable error.

ANALYSIS

Meza argues that the trial court lacked the legal authority to order the credit union to freeze his account because (1) the account lawfully could be seized only pursuant to a warrant that complied with CrR 2.3, and (2) the trial court's order was not a warrant.[1] The State argues that the trial court's order was either a warrant or the functional equivalent of a warrant, and therefore the trial court had the authority under CrR 2.3 to order the seizure of Meza's account. We agree with Meza.

A.      WARRANT REQUIREMENT

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches

---

[1] Meza also argues that the trial court's order violates his constitutional right to counsel because he needs the frozen funds to pay for his defense. Because we reverse on other grounds, we do not address this issue.

and seizures, shall not be violated." Similarly, article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." These provisions generally prohibit warrantless searches and seizures unless one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009).

A person's banking records fall within the constitutional protection of private affairs under article I, section 7. *State v. Miles*, 160 Wn.2d 236, 244-47, 156 P.3d 864 (2007); *see also State v. McCray*, 15 Wn. App. 810, 814, 551 P.2d 1376 (1976) (holding that both the federal and state constitutions protect a person's bank account against unwarranted searches and seizures).[2] Although no Washington case has addressed whether *funds* in a bank account can be seized without a warrant, it defies reason to extend constitutional protection to bank account records but not to the funds reflected in those records. The seizure of funds is as much a threat to security in a person's effects and a disturbance of a person's private affairs as the seizure of the records regarding those funds. Therefore, we hold that funds in a bank account cannot be seized without a valid warrant.[3]

The Fourth Amendment sets forth the constitutional requirements of a warrant: "[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

---

[2] In *Peters v. Sjoholm*, the Supreme Court refrained from deciding whether the Fourth Amendment applied to bank accounts and deposits. 95 Wn.2d 871, 877, 631 P.2d 937 (1981). However, that case involved federal tax liens and is not applicable here.

[3] The State does not contend that an exception to the warrant requirement applies here.

CrR 2.3 outlines the requirements of a valid search warrant in Washington. CrR 2.3(b) provides that "[a] warrant may be issued under this rule to search for and seize any (1) evidence of a crime; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) weapons or other things by means of which a crime has been committed . . . ; or (4) person for whose arrest there is probable cause, or who is unlawfully restrained." Under CrR 2.3(c), there must be probable cause to issue a warrant, the warrant must identify the property and describe the place to be searched, and the warrant must be directed to and executed by a peace officer.[4]

B.      NATURE OF THE TRIAL COURT'S ORDER

The State concedes that it did not expressly request a warrant under CrR 2.3 and that the trial court did not issue the order freezing Meza's account under CrR 2.3. However, the State argues that the trial court's order is a warrant or the functional equivalent of a warrant because it met the requirements of CrR 2.3, citing *State v. Garcia-Salgado*, 170 Wn.2d 176, 240 P.3d 153 (2010). We disagree.

1.      *Garcia-Salgado*

In *Garcia-Salgado*, the trial court ordered the defendant to provide a cheek swab for DNA as authorized by CrR 4.7(b)(2)(vi).[5] 170 Wn.2d at 181-82. The Supreme Court acknowledged that swabbing a cheek to obtain a DNA sample is a search and that such a search

---

[4] RCW 10.79.020 and RCW 10.79.035 contain similar requirements for search warrants.

[5] CrR 4.7(b)(2)(vi) states that a court may order, subject to constitutional limitations, a defendant to permit the taking of samples from the defendant's blood, hair, and other materials of the defendant's body.

must be supported by a warrant unless the search fell into one of the exceptions to the warrant requirement. *Id.* at 184. The court recited the constitutional requirements of a warrant set forth in the Fourth Amendment: "(1) a neutral and detached magistrate (2) makes a determination of probable cause based on oath or affirmation and (3) the warrant particularly describes the place to be searched and the items to be seized." *Id.* at 184-85. The court then addressed the warrant requirement:

> Normally, a warrant in Washington State is issued under CrR 2.3, but neither the state constitution nor federal constitution limits warrants to only those issued under CrR 2.3. *A court order may function as a warrant* as long as it meets constitutional requirements.

*Id.* at 186 (emphasis added). Therefore, the court concluded that "the warrant requirement of the Fourth Amendment and article I, section 7 may be satisfied by a court order." *Id.*

The court held that a search pursuant to an order issued under CrR 4.7(b)(2)(vi) is valid if the order meets the constitutional requirements of a search warrant. *Id.* The order must "be entered by a neutral and detached magistrate; must describe the place to be searched and items to be seized; [and] must be supported by probable cause based on oath or affirmation." *Id.*[6] The court did not address whether a court order also must meet the requirements of CrR 2.3 to function as a warrant.

---

[6] Because the search intruded into the defendant's body, the court also required the order to meet additional requirements regarding those searches set forth in *Schmerber v. California,* 384 U.S. 757, 769-70, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966). *Garcia- Salgado*, 170 Wn.2d at 185-87.

### 2. Trial Court's Order as a Warrant

The State argues that under *Garcia-Salgado*, the trial court's order actually is a search warrant. However, it is undisputed that the trial court did not issue its order under CrR 4.7(b)(2)(vi). And *Garcia-Salgado* does not support this argument. The court held that a court order may function as a warrant and may satisfy the warrant requirements, but did not state that a court order *is* a warrant. *Id.* at 186. Therefore, we hold that the trial court's order was not a search warrant.

### 3. Functional Equivalent of a Warrant

The State also argues that under *Garcia-Salgado*, the trial court's order is the functional equivalent of a search warrant. A broad reading of *Garcia-Salgado* provides some support for the State's position. The court in *Garcia-Salgado* expressly stated that a court order can satisfy the warrant requirement for a search and seizure if it meets the constitutional requirements of a search warrant. 170 Wn.2d at 186.

However, the court in *Garcia-Salgado* did not hold that *any* trial court order that satisfies the warrant requirements could function as a warrant. The court allowed a trial court order to function as a warrant because the trial court had authority *independent of CrR 2.3* to issue the order. *See id.* In *Garcia-Salgado*, the trial court's order was issued under CrR 4.7(b)(2)(vi), which expressly authorized the search. *Id.* at 181-82, 183. The court held that a trial court order authorizing a search *under CrR 4.7(b)(2)(vi)* could function as a court order. *Id.* at 186.

We hold that the *Garcia-Salgado* holding is limited to cases where the trial court's order is authorized by law. Allowing a court order to function as a warrant when there is no independent authority for a seizure would render CrR 2.3 meaningless. Limiting the scope of *Garcia-Salgado* preserves the integrity of CrR 2.3.

Here, the State cites no statute, court rule, or other authority allowing the seizure of a defendant's bank account in these circumstances.[7] Therefore, the seizure was not authorized by law. We hold that *Garcia-Salgado* is inapplicable and that the trial court's order cannot be treated as the functional equivalent of a warrant.[8]

We hold that the trial court's order requiring the credit union to freeze Meza's account was not a warrant and was not the functional equivalent of a warrant that satisfied the warrant requirement under *Garcia-Salgado*. Accordingly, we hold that the trial court erred in ordering the seizure of Meza's credit union account.

---

[7] Under RCW 10.105.010(1), money obtained as a result of any felony is "subject to seizure and forfeiture," although "[n]o property may be forfeited under this section until after there has been a superior court conviction of the owner of the property for the felony in connection with which the property was employed, furnished, or acquired." The State did not argue in the trial court or on appeal that RCW 10.105.010(1) authorized the seizure here, so we do not address this statute.

[8] Because of our holding, we do not address whether the trial court's order substantially complied with the requirements of a search warrant under the United States and Washington Constitutions and/or CrR 2.3. However, we note that the trial court's order did not comply with the requirement in CrR 2.3(c) that a warrant be directed to and executed by a peace officer.

We reverse and vacate the trial court's order directing the Twin Star Credit Union to freeze and hold Meza's account.

_____

MAXA, J.

We concur:

_____

BJORGEN, A.C.J.

_____

LEE, J.