

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE DEC 0 6 2018
~~Tumhurst~~, CQ
CHIEF JUSTICE

This opinion was filed for record

at 8 a.m. on Dec 6, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 95603-1 |
| v. | ) | |
| | ) | |
| MICHAEL DAVID HENDERSON, | ) | |
| | ) | Filed   DEC 0 6 2018 |
| Respondent. | ) | |

GONZÁLEZ, J.—It is generally not murder to kill another in self-defense. It may not be murder—though it is often a serious crime—to kill another by accident. Michael Henderson shot and killed Abubakar Abdi during an argument. Henderson was charged with felony murder based on second degree assault with a deadly weapon. Henderson contended that while acting in self-defense, he accidentally killed Abdi. The jury was instructed on the defense of justifiable homicide. The trial court did not instruct the jury on excusable homicide. Under the instructions given, the jury necessarily found that the shooting was neither self-defense nor accident when it found Henderson guilty of felony murder predicated on second degree assault. The Court of Appeals reversed, finding the trial court

erred when it failed to give the excusable homicide instruction. We granted the State's petition for review.

The State argues that the excusable homicide instruction was properly rejected. We agree. Henderson was able to adequately argue his theory of the case under the proper instructions that were given. We reverse the Court of Appeals and remand back to that court for further proceedings under RAP 13.7(b).

## FACTS

On October 11, 2015, Henderson shot and killed 20-year-old Abdi. Abdi and his friends were socializing at a restaurant and, later, at a Shell gas station across the street. There, Abdi began arguing with Nekea Terrell. While Terrell was buying alcohol at the gas station, Abdi called her names and told her to hurry up. Terrell, Abdi, and Abdi's acquaintances continued to insult each other. One of Terrell's acquaintances tried to calm her down.

Terrell knew Henderson because he dated her cousin. Terrell testified at trial that at this point, Abdi was "getting really bold" and "pumped up." Report of Proceedings (RP) (May 23, 2016) at 155. She said they continued to argue and she thought she was going to have to fight a "dude." *Id.* at 156. Terrell said she was ready to fight Abdi and Abdi never claimed he was armed or displayed a weapon.

Henderson joined the small group gathered around Abdi and Terrell as they argued.

Henderson, the people with him, and Abdi's group were "cussing each other out." RP (May 24, 2016) at 296. Nobody made overt threats, despite tension being high. To this point, no weapons were shown, seen, or talked about. Henderson testified that Abdi "flinched" his shoulders, lunged forward, moved his arms toward his waist, and seemed to reach for something in a pocket. RP (June 1, 2016) at 682. Henderson drew a handgun from his rear pants pocket, pointed it directly at Abdi, and pulled the trigger at close range. Abdi died almost instantly. The shooting was captured on surveillance video.

Henderson's reason for drawing the gun, whether he pulled the trigger intentionally or accidentally, and his objective when he fired the weapon were all in dispute at trial. The jury found him guilty of felony murder based on second degree assault with a deadly weapon. The Court of Appeals reversed, and we granted review.[1]

---

[1] Since the Court of Appeals reversed for instructional error, it did not reach all the arguments Henderson raised below.

ANALYSIS

Since the trial court refused to give the instruction based on a ruling of law, our review is de novo. *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998) (citing *State v. Lucky*, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), *overruled on other grounds by State v. Berlin*, 133 Wn.2d 541, 544, 947 P.2d 700 (1997)).

The Sixth Amendment guarantees the right to a fair trial. U.S. CONST. amend. VI. Jury instructions satisfy the defendant's Sixth Amendment right to a fair trial if, taken as a whole, they accurately inform the jury of the relevant law and permit each party to argue their theory of the case. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999) (quoting *State v. Bowerman*, 155 Wn.2d 794, 809, 802 P.2d 116 (1990)). The adequacy of each instruction must be "evaluated in the context of the instructions as a whole." *State v. Gentry*, 125 Wn.2d 570, 613 & n.56, 888 P.2d 1105 (1995) (citing *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993)). "A defendant in a criminal case is entitled to have the jury fully instructed on the defense theory of the case." *State v. Staley*, 123 Wn.2d 794, 803, 872 P.2d 502 (1994) (citing *State v. Hughes*, 106 Wn.2d 176, 191, 721 P.2d 902 (1986)).

Learned commentators have opined that "[u]nlike other defenses, the 'defense' of excusable homicide adds little if anything to the jury's analysis." 11

4

WASHINGTON PRACTICE: WASHINGTON PRACTICE JURY INSTRUCTIONS: CRIMINAL 15.01 cmt. at 242 (2016) (WPIC); *see* RCW 9A.16.030 ("Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent."). We elaborated in *State v. Burt*:

> Because RCW 9A.32.010 requires an unjustifiable homicide which is not criminal to be excusable, the statutory definition of excusable homicide is merely a descriptive guide to the general characteristics of a homicide which is neither murder nor manslaughter. The characteristics of excuse do not have to be independently proved or found. Insufficiency of proof beyond a reasonable doubt of the mens rea of murder or manslaughter requires a finding of excusable homicide. Therefore, if a defendant wishes to argue excuse to the jury, he only needs to persuade the jury that the prosecution has not carried its burden because there is reason to doubt that the act was committed with a mental element of at least criminal negligence.

94 Wn.2d 108, 110-11, 614 P.2d 654 (1980).

In contrast, a justifiable homicide instruction—which, here, was requested and given—*does* add to the jury's analysis. It requires a jury to find that the defendant reasonably believed the person slain (or others who the defendant reasonably believed were acting in concert with the person slain) intended to commit a felony or to inflict death or great personal injury. RCW 9A.16.050(1); WPIC 16.02. This adds substance to the jury's analysis. Excusable homicide, by contrast, is merely descriptive. It does not create an affirmative defense. It is reserved, at most, for cases where the defendant accidentally killed a person

5

without criminal negligence because, had there been criminal negligence, the slaying would be manslaughter in the second degree.[2] *See also* WPIC 15.01 cmt. at 242 ("In many cases, an instruction on excusable homicide will confuse the jury without providing any meaningful guidance.").

The Court of Appeals held it was reversible error for the trial court to refuse to give an excusable homicide instruction. It found that because there was some evidence of accident and because a defendant is entitled to control his defense, the refusal to give the instruction was reversible error. But "[j]ury instructions must be considered in their entirety to determine if there is reversible error in a specific instruction." *State v. Schulze*, 116 Wn.2d 154, 167-68, 804 P.2d 566 (1991) (citing *Caruso v. Local Union 690 of Int'l Bhd. of Teamsters*, 107 Wn.2d 524, 533, 730 P.2d 1299 (1987)). Read as a whole, these instructions adequately told the jury the intent, conduct, and necessary lack of accident it must find beyond a reasonable doubt to convict. Henderson's accident defense was wholly and adequately presented to the jury in the instructions as given. Specifically:

---

[2] We question the usefulness of WPIC 15.01 and the proper characterization of excusable homicide as a defense. Read in context, RCW 9A.16.030 does not seem to function as a defense to murder, homicide by abuse, or manslaughter in the way other provisions of chapter 9A.16 RCW do. *See, e.g.,* RCW 9A.16.060 ("In any prosecution for a crime, it is a defense that . . ."), .070 (same); *see also* Suppl. Br. of Pet'r, at 11-14. The excusable homicide statute, by contrast, merely defines the circumstances under which homicide is not a crime. As was the case here, if the jury is properly instructed as to the elements of murder, homicide by abuse, or manslaughter, the definition of excusable homicide is likely not helpful and will likely be confusing instead.

[Instruction 8:] A person acts with *intent or intentionally* when acting with the *objective or purpose* to accomplish a result that constitutes a crime.

[Instruction 9:] A person commits the crime of murder in the second degree when he *commits assault in the second degree* and in the course of and in furtherance of such crime he causes the death of a person other than one of the participants.

[Instruction 10:] *To convict* the defendant of the crime of murder in the second degree, as charged in Count One each of the following elements of the crime must be proved *beyond a reasonable doubt*:

(1) That on or about October 11, 2015 the defendant *committed assault in the second degree* . . . .

[Instruction 11:] A person commits the crime of *assault in the second degree* when he *assaults* another with a deadly weapon.

[Instruction 13:] An assault is an *intentional shooting of another person*, with unlawful force, that is harmful or offensive.

Clerk's Papers at 54-57, 59 (emphasis added).

The jury instructions adequately and properly informed the jury of the applicable law. Henderson was able to argue his theory of the case. And he did. Defense counsel presented evidence of accident through Henderson's own testimony on direct and redirect. Defense counsel also argued accident in his closing argument.

Had the jury doubted that Henderson intentionally shot Abdi, it could not have convicted under these instructions. If the jury doubted that Henderson intended to shoot Abdi, a guilty verdict on second degree assault with deadly weapon would necessarily be precluded. If the jury found the shooting was

7

accidental, it could not have found Henderson intended to shoot the gun and could not have convicted. Read as a whole, the instructions given in this case allowed Henderson to argue his theory of the case, and he did.

## CONCLUSION

We hold that the trial court did not err in refusing to give an excusable homicide jury instruction. Henderson was able to adequately argue his theory of the case under the instructions given. Accordingly, we reverse and remand to the Court of Appeals to consider the remaining arguments Henderson raised below.

González, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Result only
Madsen, J.

Gordon McCloud, J.

Owens, J.

Yu, J.

9