**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| MICHAEL HENDERSON, | ) | No. 75510-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: December 23, 2019 |
| | ) | |

MANN, A.C.J. — Michael Henderson appeals his conviction for second degree felony murder. After we reversed Henderson's conviction based on instructional error, the Supreme Court reversed and remanded for consideration of Henderson's remaining arguments. Henderson argues that the State committed prosecutorial misconduct during closing argument. Henderson also raises several contentions in his statement of additional grounds under RAP 10.10.

We affirm.

I.

On review, the Supreme Court of Washington stated the facts as follows:

On October 11, 2015, Henderson shot and killed 20-year-old Abdi. Abdi and his friends were socializing at a restaurant and, later, at a Shell gas station across the street. There, Abdi began arguing with Nekea Terrell.

> While Terrell was buying alcohol at the gas station, Abdi called her names and told her to hurry up. Terrell, Abdi, and Abdi's acquaintances continued to insult each other. One of Terrell's acquaintances tried to calm her down.
>
> Terrell knew Henderson because he dated her cousin. Terrell testified at trial that at this point, Abdi was "getting really bold" and "pumped up." Report of Proceedings (RP) (May 23, 2016) at 155. She said they continued to argue and she thought she was going to have to fight a "dude." Id. at 156. Terrell said she was ready to fight Abdi and Abdi never claimed he was armed or displayed a weapon. Henderson joined the small group gathered around Abdi and Terrell as they argued.
>
> Henderson, the people with him, and Abdi's group were "cussing each other out." RP (May 24, 2016) at 296. Nobody made overt threats, despite tension being high. To this point, no weapons were shown, seen, or talked about. Henderson testified that Abdi "flinched" his shoulders, lunged forward, moved his arms toward his waist, and seemed to reach for something in a pocket. RP (June 1, 2016) at 682. Henderson drew a handgun from his rear pants pocket, pointed it directly at Abdi, and pulled the trigger at close range. Abdi died almost instantly. The shooting was captured on surveillance video.
>
> Henderson's reason for drawing the gun, whether he pulled the trigger intentionally or accidentally, and his objective when he fired the weapon were all in dispute at trial. The jury found him guilty of felony murder based on second degree assault with a deadly weapon.

State v. Henderson, 192 Wn.2d 508, 510-11, 430 P.3d 637 (2018).

Henderson appealed his conviction to this court raising several issues including that the trial court erred in declining to instruct the jury on accidental homicide. We reversed Henderson's conviction based on the instructional error in an unpublished opinion. State v. Henderson, No. 75510-2-I, slip op. at 1 (unpublished) (Wash. Ct. App. Feb. 12, 2018), http://www.courts.wa.gov/opinions/pdf/755102.pdf, rev'd, 192 Wn.2d 508, 430 P.3d 637 (2018). The Supreme Court reversed our decision and remanded for us to consider the remaining arguments raised by Henderson. State v. Henderson, 192 Wn.2d at 510.

2

II.

Henderson argues the prosecutor committed misconduct during closing argument. We disagree.

Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To prevail on a claim of prosecutorial misconduct, a defendant bears the burden of proving: (1) that the prosecutor's comments were improper and (2) that the comments were prejudicial. State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). A prosecutor's "allegedly improper remarks must be reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). In determining if the comments were prejudicial, "the question to be resolved is whether there is a substantial likelihood that the prosecutor's misconduct affected the jury verdict, thereby denying the defendant a fair trial." State v. Davenport, 100 Wn.2d 757, 762-63, 675 P.2d 1213 (1984).

Henderson argues the prosecutor committed misconduct by making the following argument:

> Was there anything reasonable about what the defendant did here, ladies and gentleman, based on the information and the evidence that you have?
> He told you that "when I see someone who is making these hand gestures and moving, I naturally assume they are armed, so I'm going to shoot them if think they are armed."
> Is that really what we have come to? Is that really what the law is, that if a person can convince themselves that another person is armed and is threatening to them, that they can shoot them? Is that what these laws are intended for?
> Remember what I said in my opening closing arguments. The laws are designed to make sense.

(Emphasis added). Defense counsel objected, arguing that the prosecutor was inviting the jury to question the appropriateness of the law. The trial court overruled the objection, but stated,

> members of the jury, I'll reread to you a portion from Instruction No. 1: "Lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It's important to remember, however that the lawyers' statements are not evidence. Evidence is the testimony and exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions." Go ahead, please.

The prosecutor then continued,

> So, ladies and gentlemen, when you go back to the jury room -- and I assume you will look at the video again -- you can look at it slowly or quickly or at normal speed. You have all sorts of options. But at the end of the day, you have to ask yourself this: was the defendant, given his situation, based on what you learned from him, reasonable?

Henderson argues the prosecutor's statement "misstated the law and encouraged the jury to go beyond the instructions to consider the appropriateness of the law." He argues that his defense depended on jurors being able to consider his subjective opinion when evaluating his right to act in self-defense. The State argues the prosecutor did not misstate the law, but simply highlighted the reasonableness element required for self-defense in response "to the defense argument, which attempted to portray the self-defense standard as being almost entirely subjective."

A claim of self-defense is assessed "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees." State v. Janes, 121 Wn.2d 220, 238, 850 P.2d 495 (1993). In other words, the self-defense inquiry has both a subjective and an objective portion. Janes, 121 Wn.2d at

4

238. "The subjective portion ensures that the jury fully understands the defendant's actions from the defendant's own perspective, while the objective portion allows the jury to determine what a reasonably prudent person similarly situated would have done." Janes, 121 Wn.2d at 238.

It is not misconduct for the prosecutor to argue that evidence does not support the defense's theory or to fairly respond to defense counsel's argument. State v. Thorgerson, 172 Wn.2d 438, 449, 258 P.3d 43 (2011). "Remarks of the prosecutor, even if they are improper, are not grounds for reversal if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Henderson argues the prosecutor's rhetorical questions referring to the intent of the law could be interpreted as encouraging jury nullification or jury activism. However, taken in the context of the rest of the argument, a more reasonable interpretation of the prosecutor's argument was as a call to the jury to question whether the hand movements Henderson saw would reasonably precipitate the shooting, which goes to the subjective element of self-defense. Moreover, even if the State did misstate the law, any improper comment was cured by the court instructing the jury to "disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions." Additionally, the prosecutor immediately provided the correct standard, stating, "[b]ut at the end of the day, you have to ask yourself this: was the defendant, given his situation, based on what you learned from him, reasonable?"

In the context of the entire closing argument, the prosecutor's comment was not a misstatement of the law, and there is no substantial likelihood that the prosecutor's argument affected the jury verdict.

III.

Henderson raises several additional arguments in his statement of additional grounds. We address each in turn.

A.

Henderson argues that the prosecutor committed additional misconduct by shifting the burden to produce evidence onto Henderson. Henderson argues that the prosecutor committed misconduct by arguing:

> What's interesting, ladies and gentlemen, and maybe you picked up on this or maybe you didn't, there were numerous witnesses. I counted over 60 years of experience from police officers who worked that very area. Not one of them was asked, "What's that area like?" because the Rainier Valley, ladies and gentlemen, is not a war zone. The Rainier Valley is not the concrete jungle. It's a part of Seattle. Does crime happen there? Sure, it does. Does crime happen there more than other places? Possibly.
> The only person who provided you with this understanding of how this war zoned worked was the defendant.

Henderson did not object.

A prosecutor may not comment on the defense's lack of evidence because the defense has no duty to present evidence. Thorgerson, 172 Wn.2d at 467. An argument about the amount or quality of evidence presented by the defense, however, does not indicate that the burden of proof rests with the defense. Thorgerson, 172 Wn.2d at 466-67. A prosecutor can argue that the evidence does not support the defense's theory of the case. Lindsay, 180 Wn.2d at 431-32.

Henderson argues that the prosecutor's statement shifted the burden of proving the evidence onto the defense. Henderson claimed that the Rainer Beach area was similar to a war zone without providing any evidence to support this theory aside from his own opinion. Because the defense opened the door to the credibility of this evidence, the prosecutor was justified in arguing that the evidence did not support Henderson's characterization of Rainer Beach.

Further, when considering the prosecutor's statement in context of the argument, it is clear that prosecutor was questioning Henderson's credibility, rather than shifting the burden of producing evidence onto the defendant. Immediately after that statement, the prosecutor said

> Again, you have to assess credibility when he is telling you these things, ladies and gentlemen. If you find or believe that the defendant was not credible, was not telling the truth about certain things, you have to ask yourself, well, why? Why was he not being credible? Why would he say that if I know that's not true? Then you have to question further: is he credible at all? Can I believe anything he told me?

Here, the prosecutor was challenging Henderson's credibility and demonstrating that the evidence did not support Henderson's theory of the case.

## B.

Henderson argues that the prosecutor committed additional misconduct by coercing Shamo into testifying. Because Henderson cannot assert this issue on Shamo's behalf, we disagree.

An aggrieved party who is entitled to appeal is a party whose personal right or pecuniary interests have been affected. State v. Taylor, 150 Wn.2d 599, 603, 80 P.3d 605, 607 (2003). "Fifth Amendment immunity is a personal right of the witness and cannot be claimed by third parties." Seventh Elect Church in Israel v. Rogers, 34 Wn.

7

App. 91, 95-96, 660 P.2d 290 (1983) (citing Rogers v. United States, 340 U.S. 367, 71 S. Ct. 438, 95 L. Ed. 344 (1951)).

Henderson claims that Shamo was coerced into testifying. The right to assert a privilege belongs to the witness alone. Even though Shamo did not want to testify, and was threatened with contempt, he did testify in Henderson's trial. Because Henderson cannot appeal on behalf of Shamo, this argument fails.

C.

Henderson argues that the prosecution improperly withheld evidence, constituting a Brady violation. Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We disagree.

We review Brady claims de novo. State v. Davila, 184 Wn.2d 55, 74, 357 P.3d 636 (2015). "Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. To establish a Brady violation, the defendant must establish that: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching, (2) the evidence must have been suppressed by the State, either willfully or inadvertently, and (3) the evidence must be material. Davila, 184 Wn.2d at 69.

Here, Henderson contends that the Brady violation stems from the content of trial testimony that was not previously disclosed to the defense. Specifically, Shamo testified that he picked up the screwdriver that was in the victim's pocket. Shamo also

8

testified that Faissal Adan was present during the investigation. Adan was not called as a witness.

Henderson has not demonstrated that this evidence was favorable to him, that this evidence was suppressed by the State, or that the evidence was material. Because Henderson has not established any of the elements of a Brady violation, Henderson did not establish that the prosecution improperly withheld evidence.

### D.

Henderson argues that cumulative error violated his constitutional right to a fair trial. We disagree.

"Cumulative error may call for reversal, even if each error standing alone would be considered harmless." Thorgerson, 172 Wn.2d at 454. The doctrine does not apply, however, "where the defendant fails to establish how claimed instances of prosecutorial misconduct affected the outcome of the trial or how combined claimed instances affected the outcome of the trial." Thorgerson, 172 Wn.2d at 454.

Here, Henderson has not demonstrated the prosecutor's comments affected the outcome of the trial. Henderson cannot assert a claim for Shamo's alleged coerced testimony. Finally, Henderson has not demonstrated that the prosecution withheld evidence. Because Henderson has not established errors in these instances, or established how these claimed instances affected trial, his argument for cumulative error fails.

We affirm.

_____
Mann, A.C.J.

WE CONCUR:

_____

_____